Certiorari proceedings by the Market Fruit Company of Sanford, Inc., against Nathan Mayo, as Commissioner of Agriculture of the State of Florida, and E.R. Sessions *Page 556 
to review an order of the Commissioner of Agriculture made pursuant to proceedings held under F.S.A. §§ 596.13, 596.14. From an adverse judgment, Nathan Mayo, as Commissioner of Agriculture of the State of Florida, and E.R. Sessions appeal.
Reversed in part and affirmed in part.
See also 34 So.2d 543.
This controversy originated when E.R. Sessions, a fruit grower, filed with the Commissioner of Agriculture a formal complaint against the Market Fruit Company that he had sold to the company a crop of citrus fruit approximating 8,000 boxes, part of which was gathered and paid for, part picked and not paid for, and part left to be resold by the grower at a greatly reduced price. It was claimed that the total loss to the producer was about $9,000.
Eventually, after notice to the dealer, a hearing was conducted by a representative of the Department of Agriculture, and at the conclusion of the testimony the Commissioner of Agriculture entered an order that the appellee pay the appellant, E.R. Sessions, the grower, within fifteen days the sum of approximately $7,000 and "that in default thereof the citrus fruit dealer's license of respondent shall stand suspended." This amount was evidently arrived at by charging the dealer with 2,229 boxes at the contract price of $2.35 a box; 1,891 boxes at $1.85 a box, the parties having agreed, between the first and second shipments, that the price be reduced to this amount; and the residue of the crop, 3,910 boxes, at the original contractprice of $2.35; and crediting him for the payment for the first lot of fruit with the sum of $5,238.15; a cash advance paid at the time of the execution of the contract of $3,500; and 50 cents a box for the last shipment, the residue of the crop, of 3,910 boxes, or $1,955 which is all it fetched when resold. Taking into account all debits and credits, the balance corresponds to the amount the Commissioner ordered the appellee to pay.
The petition in certiorari to review this order was filed in the Circuit Court of Leon County, and after hearing the contentions of parties, the Circuit Judge quashed this order of the Commissioner of Agriculture. So the matter reaches us on the Commissioner's appeal.
Inasmuch as the original proceeding before the Commissioner of Agriculture was instituted under Section 596.13 to enforce the liability provided in Section 596.12 for violation of Section 596.11 and the eventual order of the Commissioner invoked the penalty set out in Section 596.14, all of Florida Statutes 1941, and F.S.A., it is well to give the substance of these laws in their numerical order before proceeding to a discussion of the merits of the case.
In the pertinent parts of the first, it is made unlawful for any dealer "in connection with any transaction relative to the purchase, handling, sale and accounting of sales of citrus fruit * * * to fail or refuse truly and correctly to account promptly in respect of any such transaction * * * to the person with whom such transaction is had."
In the next section the pronouncement is made that a dealer violating any of the provisions of Chapter 596 "shall be liable to the person injured thereby for the full amount of damages sustained in consequence of such violation." This liability may be enforced by complaint to the Commissioner, as was done in this case, or by suit in a competent court, and it is expressly provided by this section that no remedies at law are abridged and that the remedies afforded by the section are in addition to those available in the court.
The third section outlines the procedure before the Commissioner where the first of these remedies is pursued, as was done in the present case. If the Commissioner of Agriculture considers that the facts delineated in the complaint warrant action by him, he is enjoined to furnish the dealer with a copy of the complaint and the dealer is required to answer the charges within a reasonable time. After an opportunity for hearing is given, the Commissioner is *Page 557 
obliged to decide whether any of the provisions of the chapter have been violated. If he concludes that this has been the case, he shall, unless reparation has been made by the offender, direct him to pay the complainer "the amount of damage" which the Commissioner determines that the latter has suffered. It is expressly provided that if the dealer does not comply with the order, the grower may file suit and that the findings and order of the Commissioner shall be prima facie evidence of the facts therein stated. We shall advert to this last provision when presently we discuss the next phase in this litigation.
The last of the four sections which we have enumerated provides that the Commissioner may revoke or suspend the license of any dealer when he shall be satisfied that the dealer has transgressed any of the provisions of the chapter.
By way of recapitulation, it seems that in this case a hearing was held as provided in Section 596.13 to determine whether the dealer had failed or refused to account in respect of the transaction with the grower and that at the conclusion of the proceedings the Commissioner found that he was guilty of such misconduct; whereupon, under Section 596.14, he ordered his license suspended.
The first question we must decide grows out of the construction placed by the Circuit Judge upon the language we have quoted from Section 596.11 — that is, what constitutes a failure or refusalto account in respect of a transaction. Does it mean that the dealer is required merely to furnish a statement showing what, according to his computation, is due by him to the grower, or does it mean that when he comes within the operation of the act by applying for and being awarded a license he is bound to pay
as well?
We take up this matter initially because it appears from the order entered by the Circuit Judge that he construed the language favorably to appellee and thus decided the case on the merits, thereby obviating a determination of "grave" constitutional questions which he thought would present themselves by the operation of relevant portions of the law were the requirement "to account" held to include an obligation also to pay a balance shown by the account to be due. The Commissioner of Agriculture takes the position that when the purpose and intent of the whole law regulating the sale of citrus fruit is borne in mind, a dealer is not only required to account for moneys in respect of transactions to which he is a party, but is also commanded to discharge the obligation which he is shown by the account to owe. On the other hand, the appellee defends the interpretation of the Circuit Judge, and, in addition, contends that certain provisions of the chapter would be rendered unconstitutional by their application were the construction of the Commissioner to be upheld.
We do not agree that a dealer may comply with the law simply by furnishing to those from whom he purchases fruit statements of the dealings showing balances which result from his own computations; that a person licensed under the act to "make money or other thing of value on citrus fruit by dealing in the same," Section 596.01, could go from grower to grower during a season, leaving in his wake unpaid bills for fruit, and escape discipline under the terms of the law. Two prerequisites to the privilege of doing business as dealer are statements of any delinquent accounts growing out of the ordinary course of business with producers and of the applicant's financial condition. Section 596.03.
The Citrus Commission is required to examine the application and determine whether the applicant is qualified to hold a license, and it is especially provided that sufficient grounds for denial of the application shall be the existence of delinquent accounts growing out of transactions with producers, coupled with a showing of inability to pay them from operations during the period for which a license is sought. Section 596.04.
It seems clear that reputation for the payment of debts in the past and ability to pay, as well as likelihood of paying, obligations to be incurred in the future are matters to be weighed in determining who shall be the recipient of a license to profit *Page 558 
from fruit produced through the labor and at the expense of another. Certainly by such circumspection dealers as well as growers are protected. It requires no strained definition to hold that he who accounts must pay. In view of the object sought to be accomplished by the legislature, we think this meaning is implicit in the phrase used.
A collection of authorities on this subject may be found in 1 C.J.S., Account, at page 577.
We believe that failure of the dealer to discharge the obligation to the grower for fruit taken from the latter's grove and not paid for was a violation of his responsibility under Section 596.11, and we approve the procedure followed under Section 596.13 to enforce the liability fixed in Section 596.12 and sanction the final order of the Commissioner to pay the damage found to have resulted from the violation, or, in the alternative, to forfeit the license.
Although we agree with the procedure followed and sanction the authority invoked by the Commissioner, we do not concur in the manner of applying debits and credits in arriving at the amount which the dealer owed at the time, and it necessarily follows that the sum which he ordered to be paid, if the dealer did not wish to forfeit the license because of the failure on his part to pay as well as account, was improperly fixed. We say this because of two clauses in the contract between the parties. First, it is stipulated that the amount of the cash deposit was to be "deducted proportionately as fruits are picked and paid for." We have already pointed out that the estimated crop was 8,000 boxes. It developed in the testimony that the number of boxes actually shipped was 8,422; so it seems clear to us that as the fruit was picked and paid for the advanced sum would be exhausted at the rate of 43 1/2 cents a box. At the time, then, that the buyer removed 2,229 boxes, to which we have referred, and paid the contract price in cash he gained a credit against the deposit of $970. When he picked the second lot of 1,891 boxes, for which he was bound to pay at the reduced price, he owed $3,498.35. If he paid it, he was entitled to a further credit against the deposit at the same rate, which would amount to $823, and this, added to the $970, would make a total credit of $1,793. But he did not pay it.
If the advanced sum of $3,500 was to be proportioned as the fruit was gathered, the proportioning would apply to the last box as well as to the first, and he was not entitled to a credit for the full remainder of the deposit either at the time he defaulted or at the time the computation was made by the Commissioner.
Another provision of the contract which should be recited is the one which provided that if the buyer refused to remove the fruit under the conditions specified, the advance would be forfeited and no additional payment would be expected, but we do not consider that it would be logical to interpret this to mean that the buyer could default in the contract and claim that the unearned portion of the advance could be retained by the seller, thereby relieving him from payment of an amount in excess of that. Actually when the accumulated credit of $1,793 against the advance is deducted from the agreed price of the last shipment, he still owed $1,707 for that shipment, and that is the amount he should have been required to pay.
Of course if actual damage is shown to have grown out of the contract because of his failure to take the remainder of the crop, that could be determined in a proper proceeding in a court of competent jurisdiction.
We are not presently apprehensive about the danger to the dealer's constitutional rights that counsel for appellee so earnestly urges will inevitably result. Counsel complains that appellee has been deprived of trial by jury, but we do not consider that this plaint is well founded. There is of course no power in the Commissioner to enforce the collection of the amount of damages found by him to be due. True, he may order the amount paid, but it is expressly provided that if the dealer disregards the order, suit may then be instituted in a court having jurisdiction. So it is plain that the only discipline which *Page 559 
the Commissioner may on his own part actually enforce is the revocation of the license.
We do not feel obligated now to pass upon the validity of the provisions that if suit becomes necessary to adjudicate the claim, the party who was successful before the Commissioner shall not be liable for costs; that the findings and order of the Commissioner shall be prima facie evidence of the facts they contain, and the prevailing party shall recover his attorney's fee. The courts are chary of deciding constitutional questions where not absolutely necessary, and without appearing to beg the question, we hold that the appropriate occasion for determination of these matters is in a suit, if and when one is brought and the evidentiary value of the Commissioner's findings and order is challenged and the propriety of the assessment of costs and fees is questioned.
This is our attitude also toward the claim of appellee that a ruling requiring payment would render unconstitutional Section 596.19 of the act making violation of any provision of the chapter a misdemeanor, for then the offender would be subjected to imprisonment for debt. No semblance of such an effort is present in this record, and certainly before one could be deprived of his liberty for transgressing any provision of the law he would be given a trial at which all his constitutional guaranties would be safeguarded by the court.
A hearing to revoke a license does not even approach in dignity or seriousness a criminal prosecution, where the accused, before he can be punished, must be shown beyond a reasonable doubt to have violated the law, or even the trial of a civil case which may culminate in enforcing against his property any judgment that may eventually be obtained against him.
In the final analysis the Commissioner's order in the instant case had only the effect of causing the appellee to forfeit its license in the event he elected not to pay what he owed the grower. We have said, and we reiterate, that a license is merely a privilege to do business and is not a contract between the authority granting it and the grantee, nor is it a property right, nor does it create a vested right. See syllabus by the court, No. 4, Prettyman, Inc., v. Florida Real Estate Commission ex rel. Branham, 92 Fla. 515, 109 So. 442.
We have not overlooked the contention of the appellee that there is an inconsistency between our decision in this case when it was here before, Mayo v. Market Fruit Company, Fla., 34 So.2d 543, and a later decision in another case, Smith v. Williams, Fla., 35 So.2d 844. We do not wish to beg the question, but we do not think it is fitting to decide the point now because were we to hold that there is an inconsistency, as appellee claims, and that the later decision properly states the law, the effect would be to unsettle the law of this very case by adopting a subsequent ruling.
Reversed in part. Affirmed in part.
ADAMS, C.J., and TERRELL, CHAPMAN, SEBRING and HOBSON, JJ., concur.
BARNS, J., dissents.