713 So.2d 1040 (1998)
Elizabeth A. DOYLE, Appellant,
v.
DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, Appellee.
No. 97-1631.
District Court of Appeal of Florida, First District.
June 17, 1998.
Rehearing Denied July 23, 1998.
*1041 Wm. J. Sheppard and Richard W. Smith of Sheppard & White, P.A., Jacksonville, for Appellant.
Lisa S. Nelson, Deputy General Counsel, Department of Business and Professional Regulation, Tallahassee, for Appellee.
VAN NORTWICK, Judge.
Elizabeth A. Doyle appeals a final order of the Public Employees Relations Commission (PERC)[1] upholding her dismissal from her position as a special agent with the Division of Alcoholic Beverages and Tobacco (ABT), one of the divisions of the Department of Business and Professional Regulation. We reverse the determination that Doyle could be disciplined or suffer an enhanced penalty for failing to give truthful information to an investigator, because, as a matter of law, the evidence is insufficient to prove that Doyle deliberately lied. Further, we reverse and remand that portion of the order which determines that the agency had just cause for taking disciplinary action against Doyle for four counts of unbecoming conduct because the hearing officer did not address her defense of condonation to those charges.

Factual and Procedural Background
Doyle was employed as an ABT special agent in the agency's Jacksonville office beginning in February 1987, reaching the rank of sergeant. The record shows that the duties of an ABT special agent involve the enforcement of laws applicable to ABT licensees, typically bars, nightclubs and restaurants. *1042 Special agents often must operate undercover as patrons of these establishments and enforce laws prohibiting such acts as soliciting prostitution, sale and possession of controlled substances, underage drinking, soliciting drinks, and lewd and lascivious behavior. As Doyle was warned in her job interview, special agents are constantly exposed to vulgar and profane language and lewd and lascivious behavior; and are required to consume alcoholic beverages in undercover situations.
The record demonstrates that, until the instant charges, Doyle had an outstanding employment record. In her position, she supervised five special agents and two licensing clerks. The record reflects that when Doyle arrived in the Jacksonville office she discovered that special agents in her squad did not use the available agency computers or properly account for their work time; that violation complaints were not timely addressed; and that licensing applications were backlogged and the licensing files were not maintained in accordance with ABT guidelines. Doyle instituted additional time keeping, reporting and file maintenance requirements and programs; and obtained updated equipment for the office. As the hearing officer found, the special agents and clerks under Doyle's supervision were "not happy with the changes" which she instituted. The instant charges arose from a complaint filed by a coworker for unbecoming conduct and sexual harassment. Doyle was put on administrative leave as of September 19, 1995.
Following the complaint by a coworker, on October 13, 1995, Doyle was interviewed by John Harris, an internal inspector for the Department of Business and Professional Regulation, concerning the charges. The following colloquy occurred during the interview:
HARRIS: Okay. Have you ever used vulgar or sexually explicit language at the office in front of other employees?
DOYLE: No.
HARRIS: No?
DOYLE: No.
[DOYLE'S ATTORNEY]: I think that uh, if I may, I think she's keying off of ...
HARRIS: Well, I'd rather have her explain.
[DOYLE'S ATTORNEY]: Okay.
DOYLE: Would you explain ...
HARRIS: And I'd rather her, have her answer the questions.
DOYLE: Would you be more specific as to what you mean by vulgar or sexually explicit language.
HARRIS: The question is have you ever used vulgar or sexually explicit language at the office in front of other employees and could you give examples.
DOYLE: The answer to that question is no.
In a second interview held on October 26, 1995, when she was asked by Harris if she had anything to add, Doyle explained:
DOYLE: In response to my question on the interview, where you asked me, the first interview, I'm sorry, where you asked me if on the language that I used was vulgar or offensive my response was no, I'd like to say that I have not used any other language in my office that has not been used in front of me or by any other employees in that office. It is common, squad room language. I've been trying to think of a word here that I have not been offended by when the language was used to me and I don't feel that I have offended anyone by the language used and I wanted to restate that because I didn't feel comfortable with my answers as far as I didn't go thoroughly into the response with (INAUDIBLE). It's my understanding that I can come back and say this at this time and I would like to, to bring that forth to you that it's typical common squad room language.
HARRIS: Is this language used by everybody in the office.
DOYLE: Most everyone in the office. Yes it is.
On March 4, 1996, the ABT dismissed Doyle (i) for lying or failure to give truthful or requested information, based upon her denial in the investigative interview that she had ever used vulgar or sexually explicit language, (ii) for engaging in unbecoming *1043 conduct, and (iii) for using vulgar or abusive language.[2] Doyle appealed.
PERC assigned a hearing officer to conduct a formal hearing pursuant to section 120.57(1), Florida Statutes. As a defense, among other things, Doyle argued that, by allowing open and known vulgar and sexually explicit conduct and language in the ABT offices, the agency condoned the charged conduct and language and was required to notify employees of any renewed intent to enforce previously abdicated standards before any disciplinary action could be taken. At the hearing Doyle introduced evidence as to the language and behavior which was prevalent in her office. The record contains voluminous evidence showing that profane, vulgar, sexually explicit and abusive language was commonly used in ABT offices. In addition, ABT employees commonly circulated and posted on their office walls sexually explicit, pornographic, and vulgar signs, photographs, jokes and drawings.
The hearing officer found, in relevant part, that:
The nature of the business subjects agents and supervisors to words of a sexual and abusive nature. The language and conversations that special agents and supervisors are exposed to in bars and in their work are discussed in the office and they do not hold back the words.... Almost everyone in the enforcement office, including Doyle, used curse words even when not describing what was said in a case, on a daily basis; such as "damn," "shit,"
"fucking," "suck," "asshole," "bullshit," and "fuck." This was going on before Doyle arrived and it remained unchanged with Doyle's arrival.... Doyle used this language and did not correct her subordinates because these terms were not offensive to her or others and it was common in this work place.
The hearing officer accepted Doyle's defense of condonation to the charges regarding her use of improper language, concluding, in part, as follows:
Doyle asserts that this language and the language under Charge II [sexually and abusive remarks] were condoned by the Agency. If an agency has routinely condoned deviations from a particular rule, [PERC] will not find cause to discipline for such deviations unless the agency has first given notice to affected employees that future deviations would result in discipline. See Bembry v. Department of Health and Rehabilitative Servs., 6 FCSR para. 048 (1991). The burden of proving condonation is on the employee who has violated the rule or policy. See Eddins v. Department of Corrections, 9 FCSR para. 066 (1994).
There is credible record evidence which demonstrates that the use of cursing, profane and even abusive language is pervasive in this Division of the Agency. Doyle has been under the supervision of some of these lieutenants and captains who have used this language and many of the special agents have overheard Captains and lieutenants use this language while at work....
* * * * * *
Therefore, Doyle has used abusive language, but the Agency has condoned this action and there is no record evidence that the Agency ever put her on notice that this would be no longer tolerated. Thus, the Agency did not have just cause to discipline *1044 Doyle for abusive language under this charge of unbecoming conduct.
The hearing officer, however, did not expressly address the condonation defense with respect to the four charges of unbecoming conduct, concluding only that the agency had just cause to discipline Doyle for four counts of unbecoming conduct. Further, notwithstanding the acceptance of the condonation defense, the hearing officer found that, when Doyle denied using "vulgar or sexually explicit language" in her investigative interview, she had lied or failed to give truthful or requested information. In addition, the hearing officer concluded that, although the agency had just cause to discipline Doyle, the discipline should be mitigated to a 60-calendar day suspension.
PERC remanded the case to the hearing officer, asking her to make a more detailed analysis of the charge concerning "lying or failing to give truthful information during an internal investigation." In her Supplemental Recommended Order, the hearing officer specifically noted that Doyle "d[id] not deny making the [charged] remarks or that they were in the presence of employees she supervised or co-workers." (emphasis supplied) Instead, the hearing officer found that Doyle asserted the remarks "were not of a sexual or abusive nature ... because she did not intend them to be anything but a greeting or the words had another meaning in a different context." The hearing officer concluded that "when Doyle denied using vulgar or sexually explicit language at the office in front of other employees, during the investigation, she was lying to Harris."
Thereafter, PERC entered a final order sustaining the hearing officer's findings, rejecting the hearing officer's recommended penalty, and reinstating the agency's decision that Doyle be dismissed. PERC ruled that the finding that Doyle, a law enforcement officer, lied or failed to give truthful information during an internal investigation about her job-related behavior was conduct so serious that it outweighed her employment record. The falsification finding thus became a basis for an enhanced penalty by PERC.
On appeal, Doyle contends, in part, that ABT violated her due process rights by charging her both with employment related misconduct (using sexually and/or abusive language) and with making false statements regarding the alleged misconduct based on her mere denial of the misconduct, citing King v. Erickson, 89 F.3d 1575 (Fed.Cir. 1996). However, during the pendency of this appeal, the United States Supreme Court reversed King.[3]La Chance v. Erickson, ___ U.S. ___, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998).

La Chance v. Erickson
In La Chance, the United States Supreme Court construed the due process clause of the Fifth Amendment of the United States Constitution[4] and ruled that the due process right, guaranteeing a federal governmental employee a meaningful opportunity to be heard before adverse action affecting his public employment can be taken, does not include the right of the employee "to `put the government to its proof' by falsely denying the charged conduct," ___ U.S. at ___, 118 S.Ct. at 755, or "a right to make false statements with respect to the charged [mis]conduct," in an agency investigation. Id. at 756. The Court held:
that a government agency may take adverse action against an employee because the employee made false statements in response to an underlying charge of misconduct.
Id. at 756-57.[5]
ABT contends that Doyle's denials in this case are directly comparable to those made *1045 by the government employees in La Chance. Therefore, ABT argues, La Chance controls this case and requires affirmance.
Doyle, who alleges a constitutionally protected due process right,[6] argues that Article I, section 9 of the Florida Constitution provides higher standards of protection and places more vigorous restraints on governmental intrusions than the United States Constitution, citing, Traylor v. State, 596 So.2d 957 (Fla.1992); Brown v. State, 484 So.2d 1324, 1328 (Fla. 3d DCA 1986); and Hlad v. State, 585 So.2d 928, 932 (Fla.1991) (Kogan, J., dissenting).[7] She urges us to accept the proposition that, so long as an employee does not affirmatively lie or tell a "tall tale," the employee should be permitted to deny the charges of misconduct against her, because otherwise, an employee can never defend herself against the charge of misconduct, whether frivolous or not, for fear of committing a separate offense of falsification.
We find that it is unnecessary, however, to address this constitutional issue, see Mayo v. Market Fruit Co. of Sanford, 40 So.2d 555, 559 (Fla.1949)(courts should not rule on constitutional questions where not absolutely necessary) because, for the reasons that follow, we have determined that the evidence in this case is insufficient to sustain the falsification charge against Doyle.

Falsification
When Sergeant Doyle was interviewed by Inspector Harris and asked if she ever used "vulgar or sexually explicit" language, she initially replied, "No." Her counsel attempted to explain Doyle's denial, but was interrupted and was told that Doyle would have to explain for herself. Doyle then asked Inspector Harris if he would be more specific as to what he meant by "vulgar or sexually explicit" language. Instead of asking her about the use of specific words or phrases, Inspector Harris merely repeated the original question without any clarification. Doyle responded to the repeated question by saying "The answer to that question is no." (emphasis added). Later, she explained that the language she used was nothing more than common squad room language. This explanation clearly raises facts relating to the condonation defense. Under the circumstances, we agree with Doyle that her denial was merely a legal conclusion or a matter of personal opinion which should not be punishable as a lie.
Doyle was charged with "lying" under rule 61-2.010(21). This rule requires that there must be a "deliberately inaccurate, incorrect or misleading" statement. Because Doyle was dismissed for making a deliberate false statement, we believe the law of perjury offers some guidance on the meaning that should be attached to a charge of "lying." To establish perjury:
The statement must be one of fact, and not of opinion or belief. It cannot be based on interpretations of alleged agreements, either oral or written, on opinions calling for the exercise of judgment, or on statements as to the legal effect of certain facts....
60A Am.Jur.2d Perjury, § 22 (1988)(footnotes omitted); see also Blackburn v. State, 495 N.E.2d 806, 808 (Ind.Ct.App.1986)("A statement as to the legal effect of certain facts ... ordinarily will not constitute perjury").
In the questioning by the internal investigator, Doyle was not asked if she said a particular word or phrase on a particular date, but generally whether she used "vulgar or sexually explicit" language. Thus, Doyle's alleged lying was based not on her denial of *1046 specific factual events or the utterance of specific words. Rather, she denied only that the words she used in the workplace were "vulgar" or "abusive"terms used in the rule she is charged with violating, see rule 61-2.010(35), Florida Administrative Code. We believe that her denial was merely an assertion of her legal defensea legal conclusion or a matter of personal opinionnot a statement of fact. As explained by the United States Supreme Court, "[p]recise questioning is imperative as a predicate for the offense of perjury." Bronston v. U.S., 409 U.S. 352, 362, 93 S.Ct. 595, 602, 34 L.Ed.2d 568 (1973).
In her supplemental order, the hearing officer recognized that Doyle did not deny using specific words, but rather that she denied using them in a vulgar or sexually explicit manner in the atmosphere of her workplace. Considering Doyle's answer, and the context in which it was given, Doyle cannot be said to have made a "deliberately inaccurate" statement of fact. It is clear that she was merely stating her legal defense to the charge or offering her opinion or belief. Further, there is no evidence that she was making a factual statement which she knew or believed to be false, inaccurate or misleading.

Unbecoming Conduct
Doyle argues that the hearing officer and PERC erred by rejecting her condonation defense to the remaining unbecoming conduct charges. After a thorough consideration of the evidence in the record, which we will not detail herebut which suffice it to say reveals a workplace where both improper language and improper conduct commonly existedwe are not satisfied that the hearing officer considered Doyle's defense of condonation to the unbecoming conduct charges. For this reason, we are persuaded that the cause should be remanded to allow the hearing officer to expressly determine, in the first instance, whether Doyle is entitled to this defense to the unbecoming conduct charges.
Accordingly, we REVERSE that portion of PERC's order sustaining the charge of lying and the imposition of the penalty of dismissal based thereon, and REMAND for further proceedings consistent with this opinion.
BOOTH and PADOVANO, JJ., concur.
NOTES
[1] Pursuant to section 447.208, Florida Statutes (1995), PERC is the administrative body charged with hearing appeals arising out of the dismissal of any permanent employee in the state career service system.
[2] These offenses are defined in rule 61-2.010, Florida Administrative Code as follows:

(1) Unbecoming ConductAny willful action or conduct by an employee which impedes the Department's efforts, brings discredit on the Department, impairs the operation or efficiency of the Department or any employee, impairs the employee's ability to perform his or her job, or results in the reluctance or refusal on the part of others to work with the employee.
* * * * * *
(21) Lying or Failure to Give Truthful or Requested InformationOral or written statements that are deliberately inaccurate, incorrect or misleading but which do not constitute falsification of records. This includes lying or failure to provide information during an internal investigation.
* * * * * *
(35) Threatening or Abusive LanguageThe use of language which is threatening, profane, vulgar, obscene or abusive.
[3] This court requested the parties to file supplemental briefs addressing whether La Chance mandated affirmance in this case and whether there was competent, substantial evidence to support the falsification charge. We commend all counsel for the quality of their supplemental briefs.
[4] The Fifth Amendment provides "[n]o person shall be deprived of life, liberty, or property, without due process of law...." U.S. Const., amend. V.
[5] See also Brogan v. U.S., ___ U.S. ___, 118 S.Ct. 805, 139 L.Ed.2d 830 (1998) in which the Supreme Court rejected the so-called "exculpatory no" doctrine, under which a simple denial of guilt would not violate 18 U.S.C. § 1001 (1988 ed.)(creating criminal liability for the making of false statement).
[6] Article I, section 9 of the Florida Constitution provides in pertinent part that no person shall be deprived of life, liberty or property without due process of law. A constitutionally protected property interest in public employment can be established by demonstrating that the employment is governed by a state law which provides legitimate expectations of continued employment. McRae v. Douglas, 644 So.2d 1368, 1372 (Fla. 5th DCA 1994). "A statute which allows a demotion or dismissal only on the basis of `cause' creates a constitutionally protected interest in public employment." Johnson v. Beary, 665 So.2d 334, 335 (Fla. 5th DCA 1995). Under section 110.227(1), Florida Statutes (1995), an employee who has permanent status in the career service may only be suspended or dismissed for cause.
[7] But see State, Dep't of Health and Rehab. Servs. v. Cox, 627 So.2d 1210, 1217 (Fla. 2d DCA 1993), approved in part, quashed in part, 656 So.2d 902 (Fla.1995).