795 So.2d 270 (2001)
Roslyn VARGAS, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D99-2407.
District Court of Appeal of Florida, Third District.
October 3, 2001.
*271 Joel Kaplan, Miami, for appellant.
Robert A. Butterworth, Attorney General, and Steven R. Berger, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and GERSTEN, and FLETCHER, JJ.
FLETCHER, Judge.
Roslyn Vargas, a former police officer, was charged by amended information with three counts of perjury. Each count of perjury alleged that the crime occurred when, as a public officer, she made "a false statement which [she] did not believe to be true, under oath in an official proceeding" at a statement taken by an assistant state attorney during the course of an official investigation into the homicide of one Neil Napolitano. Vargas was convicted after jury trial of all three counts and the trial court denied her post-trial motions. For *272 the reasons that follow, we reverse and vacate her convictions.
The elements of perjury in official proceedings are 1) making a false statement, 2) which one does not believe to be true, 3) under oath in an official proceeding, 4) in regard to any material matter. Fla. Stat. § 837.02(1) (1999); see also Hirsch v. State, 279 So.2d 866, 869 (1973)(essential elements of perjury). In the instant case, the three charges against Vargas arose from her sworn statement taken on February 22, 1996, before an assistant state attorney pursuant to an offer of use immunity. Count 1 of the final charging document alleged to be false Vargas' statement "that when she met with Neil Napolitano in August 1995 it was for work related purposes." Count 2 alleged to be false Vargas' statement that she was not with Napolitano voluntarily from September 5-11, 1995. Count 3 alleged to be false Vargas' statement that she did not voluntarily go with Napolitano on September 12, 1995.
We note at the outset that "materiality" is not an element of the crime of perjury in Florida but is a threshold issue that a court must determine as a matter of law prior to trial. State v. Ellis, 723 So.2d 187 (Fla.1998); State v. Diaz, 785 So.2d 744 (Fla. 3d DCA 2001). To be material, statements must be germane to the inquiry, and have a bearing on a determination in the underlying case. Diaz, 785 So.2d 744, 746.
In the instant case the State argued that the allegedly perjurious statements were material, i.e., if Vargas was untruthful about her relationship with Napolitano, that created a different avenue of investigation into his murder than if she was truthful. The trial court noted its difficulty with the State's position, stating that the rationale was "thin." Nonetheless, the trial court found in the State's favor on the element of materiality. R. 836, 841. Our review of the record leads us to conclude that the State's position is less than thin. We find as a matter of law that the allegedly perjurious statements were immaterial to the underlying investigation and prosecution of Neil Napolitano's murder. The statements as recorded for all three perjury counts charged were not germane to the inquiry; their truthfulness was not the vital issue in the underlying investigation. See Diaz, 785 So.2d at 745-46.
The record transcript of Vargas's sworn statement provides the following, identified by the State as specific instances of her alleged perjury:
Regarding Count 1:
"Q: So you didn't document the meetings in August that you had with Neil Napolitano?
A: No.
Q: And those meetings in your mind were personal meetings or work related meetings or a combination?

A: Work related. I was still on county time."
[T. 218-19][e.s.].
"Q: So in August you continued to meet with him although Barbara Gentile and the squad didn't know really that that's going on?
A: Right.
Q: But your testimony is you were doing it for work related purposes?

A: Yes."
[T. 221][e.s.].
The statement alleged to be perjury must be one of fact, and not of opinion or belief. E.g., Doyle v. Dept. Business and Professional Reg., 713 So.2d 1040 (Fla. 1st DCA 1998). The questions posed to Vargas with regard to Count 1 elicited a statement of opinion, not of fact. When *273 asked what she believed "in her mind" to be the nature of the August meetings with Napolitano, Vargas was being asked to express her opinion whether she believed the incidents were work-related or personal. The question as posed did not call for a factual response, and the crime of perjury does not encompass expressions of opinion, see Doyle, 713 So.2d at 1045-46. Indeed, the State's evidence did not show that all of Vargas's encounters with Napolitano were not work-related; there was no empirical showing that this statement was false. As a result, the conviction for Count 1 must be reversed.
Regarding Count 2:
"Q: And you were with him by your own choice all this time? It wasn't ever a situation where, you know, you couldn't leave or anything like that?

A: It's not that I didn't try to leave.... In Neil's mind there was a lot more to this relationship than there actually was.
Q: Okay, but we are going into Saturday night now and up until this point in time was there ever a time that you wanted to leave or tried to leave and you didn't feel like you could leave?

A: Yes.
Q: When was that?
A: That was whenMonday, Tuesday I said, "Look, I've got to go get clothes..." ... I guess it's kind of like you had to know him and know how he was and that there was almost like there were two sides to this person.
Q: But did you try to leave at any point?

A: Yes, I did. [Vargas describes how she attempted to leave and Napolitano grabbed her purse and removed the gun she was carrying. After a brief struggle with him he returned gun and purse]
. . .
Q You didn't try to leave?

A: No more at that point....
Q: During the following day did you want to leave and you only stayed there because he was ...
A: From fear.
Q: So when you were in the shopping malls and all of that, and at Disney and all of that you didn't feel you could walk away?

A: No."
[T. 260-263][e.s.]
In the same manner, the conviction for Count 2 fails. The questions as phrased in the record could only elicit statements of opinion, not fact. One's asking, "you didn't feel like you could leave," or "you didn't feel you could walk away," calls for answers based on personal opinion and perceptions at the time, and cannot sustain a conviction for fact-based perjury.
Regarding Count 3:
"Q: On the 11th then you call your son late in the day and he comes and picks you up, right?
A: Right.
Q: Did you ever have an opportunity on the 11th to walk away from Neil Napolitano?
A: He actually watched my son pick me up and take me home.
. . . .
A: I got in the car and my son took me home.
Q: Is there any reason you couldn't have done that the prior week?
A: He just wouldn't let me.
Q: Did he ever tell you that he wouldn't let you?
A: It was just the fear like I told you before in his mind it was a totally different *274 relationship than what it actually was...."
[T. 274-76].
. . . .
"Q: Was there a reason you didn't get into the car with one of the kids?
A: Yes.
. . . .
Q: What was the reason?
A: Neil.
Q: Did he say anything? Did he tell you to get in the car with him?
A: Yes.
. . . .
Q: Did he have a weapon?
A: Not that I remember, no.
Q: I mean, are you trying to tell us that he kidnaped you that day in front of your kids?
A: Did he hold something to me? Did he physically force me in the car? No. He didn't. But it was the fear again. And I said, `leave them alone and let them do whatever it is they have to do, just leave my kids alone.' So I got in the car with him.
Q: So you didn't go in the car with Neil by choice?
A: (shaking head)."
[T. 285-86].
The statements upon which Count 3 is based are, as well, grounded in Vargas' perceptions at the time and not on empirical fact. In addition, the questions posed to elicit the allegedly perjured testimony were, in all three counts, not asked with the appropriate specificity necessary to result in an equally specific statement of fact. See Argyros v. State, 718 So.2d 222 (Fla. 2d DCA 1998); see also Doyle, 713 So.2d at 1046, citing to Bronston v. U.S., 409 U.S. 352, 362, 93 S.Ct. 595, 602, 34 L.Ed.2d 568 (1973)("[p]recise questioning is imperative as a predicate for the offense of perjury."). Indeed, in the statements forming the basis for Count 3, Vargas was non-responsive to the first question asked, and did not respond with a vocal statement at all to the last question asked. In neither case did the interviewer follow up with a specific and affirmatively fashioned question designed to elicit an equally specific answer. T.274-285. See Argyros, 718 So.2d at 222.
Vargas's answers in all three counts were immaterial to the underlying investigation into Napolitano's murder, and merely reflect her state of mind at the time these events occurred. In the context of the record, Vargas's statements can only be characterized as statements of opinion or belief, and not of fact. For this reason, the statements forming the basis for all three counts of perjury are outside the reach of that crime under Florida statutory and common law. We therefore reverse Vargas's convictions and sentences for perjury.
Reversed; convictions vacated.