PER CURIAM.
John B. McAlpin, Chief of the Sneads Police Department, appeals the Criminal Justice and Standards Training Commission’s final order suspending his law enforcement certification for eighteen months, to be followed by two years’ probationary reinstatement. We reverse as to two of the charges, but affirm as to the misuse of official position charge.
Appellant raises a preliminary issue regarding the adequacy of the disciplinary guidelines adopted by the Commission and incorporated into the moral-character rule. We find this issue without merit, but useful to discuss the structure of the moral-character rule. Law enforcement officers are required to maintain good moral character. § 943.1395(7), Fla. Stat. (2006). Florida law requires the Commission to adopt disciplinary guidelines for failure to maintain good moral character. § 943.1395(8), Fla. Stat. (2006). The Commission has promulgated the moral-character rule, which directly adopts various criminal statutes as actions which constitute “failure to maintain good moral character.” Fla. Admin. Code R. 11B-27.0011(4). As required by the statute mentioned above, the Commission has set forth disciplinary guidelines for each category of offense (e.g., felony, misdemeanor, etc.) and for certain acts within each category (e.g. grand theft, misuse of official position, etc.). Fla. Admin. Code R. 11B-27.005. We find that the Commission’s rules, as raised in the context of this case, provide adequate notice of potential discipline.
On January 10, 2011, the Commission filed an amended administrative complaint against Appellant for failing to maintain good moral character because of alleged acts of witness tampering, perjury, and misuse of official position or any lesser included offenses. The charges stemmed from Appellant’s investigation into sexual abuse allegations made by a child against Shelly Simpson, who was the child’s stepfather, an employee of the City of Sneads, and a friend of Appellant.
On the night of the child’s initial sexual abuse report, Appellant stated to Department of Children and Families (DCF) investigator Amy Bates that he knew the suspect and that the allegations sounded out of character for Simpson. A few weeks into the investigation, Appellant conducted a lengthy interview with the alleged victim. During the interview Appellant repeatedly told her that he believed she was lying, that it was “okay to make this right,” and that he could get her the help she needed. He also asked her how she would feel if her younger brother made similar accusations against her. Appellant’s investigation was eventually taken over by the Jackson County Sheriffs Office, and although charges were filed against Mr. Simpson, he was acquitted. At some point during the investigation, the alleged victim’s grandfather complained and the Florida Department of Law Enforcement (FDLE) began investigating the case as a disciplinary matter.
FDLE’s investigation resulted in a lengthy interview of Appellant, in which he was questioned on various details of how he handled the sexual abuse allegations. During the interview, Appellant was asked whether he was notified by DCF investigator Amy Bates of potential additional vie- *419 tims. Appellant responded he could not recall:
FDLE Investigator: Did Amy Bates ... ever attempt to contact you with information, or additional information, concerning additional victims?
Appellant: No
FDLE Investigator: Did they ever call you on February 14th?
Appellant: Not to my knowledge. It is not noted here. The only time I heard about additional victims was way later after this when the Sheriffs department was investigating this there was some victim from years ago that lived somewhere else.
FDLE Investigator: Do you recall getting a phone call from Amy Bates ... on or about February 14th at 11:33?
Appellant: No- sir, I do not recall that.
[[Image here]]
FDLE Investigator: Am I correct in understanding that you are denying that you ever got any information from ... Amy Bates regarding additional witnesses?
Appellant: Witnesses?
FDLE Investigator: Witnesses and/or victims.
Appellant: I do not recall getting any information from any of them concerning this. After they provided this medical report, this doctor’s report, I don’t recall any other significant conversations with any of them. No.
The complaint asserted that Appellant was in violation of the moral character rule governing law enforcement officers through violation of sections 914.22(1) (witness tampering), 837.012(1) (perjury), and 112.313(6) (misuse of official position), Florida Statutes, or any lesser included offenses, and that an appropriate penalty should be imposed in accordance with section 943.1395(7). Appellant requested a formal hearing, and the matter was transferred to the Division of Administrative Hearings. A formal hearing was held before an Administrative Law Judge (ALJ), where the parties presented witness testimony and evidentiary exhibits. Following the formal hearing, the ALJ issued a recommended order.
The ALJ found the following facts: that the alleged abuse was reported on January 24, 2007; Bates informed Appellant of possible additional victims on February 14, 2007; Appellant interviewed the alleged victim on February 22, 2007, for more than two hours; the interview seemed more like a suspect interrogation with Appellant trying to persuade the alleged victim to change her testimony; Appellant made clear he thought the alleged victim was lying and told her that she needed to set things right and get long-term counseling for her issues; Appellant stated during his interview with the FDLE investigator that he was not aware of other possible victims, that this statement was false, and that Appellant knew it was false when he made it; Appellant failed to maintain contact with DCF personnel, failed to collect evidence, and failed to further investigate inconsistencies in the alleged victim’s story; and to the extent Appellant conducted an investigation, he did so with the goal of undermining the alleged victim allegations. The ALJ also twice found that Appellant did not believe alleged victim: “In short, from a review of all of the evidence presented in this case, it appears that [Appellant] decided early on that [the alleged victim] was not telling the truth;” and “It was clear that [Appellant] did not believe her story and was determined to get her to change it.”
Based on the findings, the ALJ concluded that the Commission had proven by clear and convincing evidence that Appellant had violated sections 914.22(1), *420 837.012(1), and 112.318(6), thereby violating section 943.1395(7) and Rule 11B-27.0011(4)(a) and (b). The ALJ also hedged her findings on witness tampering by finding in the alternative the lesser included charge of witness harassment. For failing to maintain good moral character as required by section 943.1395(7), the ALJ recommended that the Commission suspend Appellant’s certification for eighteen months, followed by two years of probation. The Commission thereafter issued a final order adopting the ALJ’s findings of fact, conclusions of law (with very slight modification), and proposed penalty.
Administrative conclusions of law are subject to de novo review. Parlato v. Secret Oaks Owners Ass’n, 793 So.2d 1158, 1162 (Fla. 1st DCA 2001). The decision is subject to reversal if the agency has misinterpreted the applicable law. Payne v. City of Miami, 52 So.3d 707, 735 (Fla. 3d DCA 2010). This Court has the statutory authority to “set aside agency action” if it finds that the agency “has erroneously interpreted a provision of law and [that] a correct interpretation compels a particular action.” § 120.68(7)(d), Fla. Stat. (2014). The appellate court on review is guided by the true nature of the finding and not whether the ALJ labeled it as a finding of fact. Pillsbury v. State, Dep’t. of Health & Rehabilitative Servs., 744 So.2d 1040, 1041 (Fla. 2d DCA 1999). An ALJ’s findings of fact must be based upon competent, substantial evidence. § 120.68(7)(b), Fla. Stat. (2014). Where there is no competent, substantial evidence to support a finding of fact that underpins a charge, the charge must be dismissed. Pic N’ Save Cent. Fla., Inc. v. Dep’t of Bus. Regulation, 601 So.2d 245, 256 (Fla. 1st DCA 1992).
The common thread for the witness tampering and witness harassment conclusions of law is a lack of the requisite mens rea on behalf of Appellant. While the burden of proof may be lower in an administrative setting, requiring only clear and convincing evidence in this case, the elements of the charge do not change from the criminal setting to the administrative setting.
Witness tampering occurs when the accused knowingly uses intimidation or physical force, or threatens another person, or engages in misleading conduct toward another person, with intent to cause or induce any person to withhold testimony from an official investigation or official proceeding. § 914.22(1), Fla. Stat. (2008). Further, witness harassment takes place when the accused intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from attending or testifying in an official proceeding or cooperating in an official investigation. § 914.22(3), Fla. Stat. (2008). The specific intent “to hinder, delay, or prevent the communication of information regarding a crime” must be established to show witness tampering. Gill v. State, 622 So.2d 92, 93 (Fla. 2d DCA 1993). For witness harassment, the intent is less culpable. It requires only the intent to harass and that the witness is thereby dissuaded, delayed, or hindered from testifying. Fla. Std. Jury Instr. (Crim.) 21.11. Harassment is defined as, “Words, conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in that person and serves no legitimate purpose.” Black’s Law Dictionary 721 (7th ed. 1999).
The ALJ stated twice in the recommended order that Appellant did not believe the alleged victim’s accusation against his friend, which defeated the intent required for witness tampering or harassment. As a law enforcement officer, Appellant was entitled to formulate opinions on the credibility of victims, suspects, *421 and witnesses and proceed to investigate the case with those opinions as a starting point. Further, when a law enforcement officer applies investigative interview techniques of the sort used in this case, they can serve the legitimate purpose of trying to reach the truth, or at least what the officer thinks is the truth, which does not constitute witness tampering or harassment.
Appellant was also charged with perjury for supposedly making “a false statement, which he ... [did] not believe to be true, under oath, not in an official proceeding, in regard to any material matter.” § 837.012(1) Fla. Stat. (2008). Mere inaccuracy or confusion is not an adequate basis to find perjury has been committed. Wolfe v. State, 271 So.2d 132, 135 (Fla.1972). Personal opinions or matters of belief are not perjury, and an initially false statement, can be further explained so that the statement taken as a whole is not perjury. See Doyle v. Dep’t of Bus. & Prof'l Regulation, 713 So.2d 1040, 1045 (Fla. 1st DCA 1998). The typical manner of proving perjury is to have two conflicting sworn statements by the same person. See e.g., Rutherford v. State, 939 So.2d 328, 329 (Fla. 4th DCA 2006) (“I know for a fact” in one statement and “I believe” in another is sufficient to support perjury charge).
In this case, the perjury charge is based on statements by two separate individuals. One statement was by DCF investigator Amy Bates, who said that she told Appellant of additional victims, and the other statement was by Appellant, who said he did not recall being told of additional victims. First, both statements could be true. And without conflicting statements in this instance, there is insufficient evidence supporting a perjury charge. Secondly, even if some conflict in fact could be inferred from the statements, Appellant’s statement is one of belief or opinion, not of empirical fact. He .did not specifically deny being told by Bates of additional victims; he just stated, when the statement is taken as a whole, that he did not recall being told such by Bates. Therefore, there is no competent, substantial evidence to find a violation of the moral-character rule based on perjury.
Finally, the statutory proscription against misuse of official position provides that “[n]o public officer ... shall corruptly use or attempt to use his or her official position or any property or resource which may be within his or her trust, or perform his or her official duties, to secure a special privilege, benefit, or exemption for himself, herself, or others.” § 112.313(6), Fla. Stat. (2008). “Corruptly” is an intent term defined by statute as “done with a wrongful intent and for the purpose of obtaining ... any benefit resulting from some act or omission of a public servant which is inconsistent with the proper performance of his or her public duties.” § 112.312(9), Fla. Stat. (2008). The prohibition against misuse of public office “sweeps widely” and encompasses the type of misuse or attempted misuse of official position alleged here, involving the benefit secured for Appellant’s friend. See Fla. Comm’n on Ethics v. Sullivan, 430 So.2d 928, 934 (Fla. 1st DCA 1983).
The final order’s conclusion that Appellant improperly used, or at least attempted to use, his official position as a city police chief to thwart a potential criminal prosecution of his friend and fellow city employee Mr. Simpson is supported by the record. The ALJ found that Appellant took charge of Mr. Simpson’s criminal investigation, but then: failed to interview witnesses; failed to collect physical evidence (asking the suspect to retrieve evidence from his own home in one instance); ignored information from the DCF about *422 the possibility of other victims; failed to follow-up with medical personnel about their completion of an examination; refused to ' coordinate and cooperate with child protective investigators from DCF or the prosecutor; inappropriately berated the alleged victim while interviewing her as if she were a suspect instead of a child victim; and opined to the assistant state attorney .that there was insufficient evidence to charge Mr. Simpson. Under these facts, competent, substantial evidence supports the conclusion that Appellant wrongfully used his public office by conducting a results-oriented criminal investigation intending to benefit his friend, in that no charges would be filed against him. While Appellant did not have the specific intent during the course of his interview of the victim to harass or tamper with a witness, the totality of the investigation does support the intent to misuse his official position to benefit his friend.
Therefore, we AFFIRM IN PART AND REVERSE IN PART the final order and REMAND for the Commission to dismiss the witness tampering, witness harassment, and perjury changes and to review the discipline imposed by the final order in light of the remaining charge of misuse of official position.
VAN NORTWICK and .OSTERHAUS, JJ., and FENSOM, JAMES B., Associate Judge, concur.