# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

——————————————

Case No. 5D23-0846
LT Case No. 2021-CF-4602-A

——————————————

OREN MILLER,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

——————————————

On appeal from the Circuit Court for Marion County.
Anthony M. Tatti, Judge.

Dock A. Blanchard, of Blanchard, Merriam, Adel, Kirkland &
Green, P.A., Ocala, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Daniel P.
Caldwell, Assistant Attorney General, Daytona Beach, for
Appellee.

November 9, 2023

SOUD, J.

Oren Miller appeals his perjury conviction stemming from a
sworn statement he gave to the State Attorney's Office
investigating allegations that Miller violated Florida's Sunshine
Laws during his service on the Sumter County Commission. We
have jurisdiction. *See* Art. V, § 4(b)(1), Fla. Const.; Fla. R. App. P.

9.030(b)(1)(A). We reverse, concluding that Miller's statements—viewed as a whole—are insufficient as a matter of law to support a conviction for perjury.

## I.

Miller was elected to the Sumter County Commission shortly after the August 2020 primary and took office the following November. For Miller—a then-seventy-year-old retiree from Joliet, Illinois with no prior criminal record—this election represented his first foray into politics.

Thereafter, the State Attorney's Office for the Fifth Judicial Circuit received three complaints of Sunshine Law violations centered on allegations that Miller's wife served as a conduit for communications between Miller and other commissioners, as well as Miller's alleged failure to maintain public records relating to his use of Facebook. As part of the State Attorney's investigation, Miller was subpoenaed to give a sworn statement, which he provided on October 6, 2021.

During the sworn statement, Miller was asked numerous questions about phone calls he had with another county commissioner, Gary Search. Based on cell phone records it had obtained, the State Attorney and his representatives inquired about both the substance and the timing of phone calls as it related to relevant meetings of the Sumter County Commission. Questioning focused on calls that took place after Miller had taken office in November and in his "official capacity."

In response to leading questions, Miller twice acknowledged that no calls occurred after January. However, prior to those questions, Miller made clear his uncertainty as to precisely when calls with Search ceased. Specifically, Miller stated the phone calls ended "about the first two or three months" after he and Search took office in November 2020, or "maybe three or four months." Thus, by Miller's reckoning, the calls stopped between January and March 2021 or "somewhere in there."

Later in the sworn statement, Miller did not dispute that he received a phone call from Search in February, though he could not remember what they discussed. Further still, when asked about a

phone call with Search in March 2021, Miller stated, that while he could not remember what they discussed, "*[y]es, I promise you we had phone calls.*"[1]

Ultimately, Miller was charged via information with one count of Perjury in an Official Proceeding.[2] Following trial, he was found guilty as charged. Miller was adjudged guilty and sentenced to the time served of seventy-five days in jail followed by three years of probation. This appeal followed.

## II.

We review this case to determine if there is competent, substantial evidence to support the jury's verdict finding Miller guilty of perjury. *See Bush v. State*, 295 So. 3d 179 (Fla. 2020). In doing so, we "'view[ ] the evidence in the light most favorable to the State' and, maintaining this perspective, ask whether 'a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt.'" *Id.* at 200 (citations omitted); *see also Peoples v. State*, 251 So. 3d 291, 300 (Fla. 1st DCA 2018) ("In our review of the sufficiency of the evidence, all evidence is viewed in the light most favorable to the verdict, and all inferences are interpreted in favor of the verdict." (citation omitted)).

## A.

Section 837.02, Florida Statutes, provides, "whoever makes a false statement, which he or she does not believe to be true, under oath in an official proceeding in regard to any material matter, commits a felony of the third degree . . . ." § 837.02(1), Fla. Stat. (2021). Thus, Florida law is clear that to commit the felony offense of perjury in an official proceeding, not only must the statement made under oath be false, but the one making the statement must "not believe [the statement] to be true." *Id.*

---

[1] Miller remained insistent throughout his statement that he never discussed commission business during any phone call.

[2] Miller was not charged in this case with violating Florida's Sunshine Laws.

In accordance with the perjury statute, to prove Miller guilty of perjury, the State was required to prove beyond a reasonable doubt that he (1) made a false statement, (2) that he did not believe was true, (3) under oath in an official proceeding, and (4) regarding any material matter. *See id.*; *see also Hirsch v. State,* 279 So. 2d 866, 869 (Fla. 1973); *Cohen v. State*, 985 So. 2d 1207, 1209 (Fla. 3d DCA 2008); *Vargas v. State*, 795 So. 2d 270, 272 (Fla. 3d DCA 2001).

The materiality of the statement is not an element of the crime to be proven to the jury. As used in the perjury statute, "'[m]aterial matter' means any subject, regardless of its admissibility under the rules of evidence, which could affect the course or outcome of the proceeding. *Whether a matter is material in a given factual situation is a question of law.*" § 837.011(3), Fla. Stat. (emphasis added). Accordingly, materiality is a threshold issue that must be determined by the court as a matter of law prior to trial. *See Vargas*, 795 So. 2d at 272; *see also Soller v. State*, 666 So. 2d 992, 993 (Fla. 5th DCA 1996).[3]

### B.

Miller's sworn statement, when viewed as a whole, is not so demonstrably false as to support a conviction for perjury.

### 1.

The information alleges Miller committed perjury when "he stated there were no telephone conversations between him and

---

[3] We reject Miller's claim that his statements were not material. "To be material, statements must be germane to the inquiry, and have a bearing on a determination in the underlying case." *Parris v. State*, 359 So. 3d 1178, 1189 (Fla. 4th DCA 2023), *rev. denied*, No. SC2023-0818, 2023 WL 6620379 (Fla. Oct. 11, 2023) (quoting *Vargas*, 795 So. 2d at 272). However, "[i]t is not essential that the false testimony bear directly on the main issue. It is sufficient if the false testimony is collaterally or corroboratively material to the ultimate material fact to be established." *Parris*, 359 So. 3d at 1189 (quoting *Gordon v. State*, 104 So. 2d 524, 531 (Fla. 1958)).

Sumter County Commissioner Gary Search *after January 2021*, that OREN MILLER knew to be false and untrue, in violation of Florida Statute 837.02(1)." Of course, "the State must prove the allegations set up in the information or the indictment." *Lewis v. State,* 53 So. 2d 707, 708 (Fla. 1951); *see also Banasik v. State*, 889 So. 2d 916, 918 (Fla. 2d DCA 2004) (quoting *Lewis*).

Reviewing the entirety of the sworn statement made by Miller to investigating authorities, it cannot be said he in fact definitively claimed that there were no phone calls with Commissioner Search after January 2021. Indeed, quite the contrary.

While questions from representatives of the State Attorney's Office at times summarize Miller's prior answers as definitively stating there were no calls after January, Miller's statement viewed as a whole makes clear he was not so precise. Rather, Miller's entire statement indicates the calls stopped between January and March 2021 or "somewhere in there." Miller even goes as far to acknowledge phone calls in March 2021 by saying, "*Yes, I promise you we had phone calls.*"[4]

Given this context of Miller's entire statement, "[i]t cannot be said with any degree of certainty by a fair reading of all of [Miller's statement], that the two challenged answers can be considered perjurious in the full context of his testimony." *Wolfe v. State*, 271 So. 2d 132, 135 (Fla. 1972). To hold otherwise would permit the trial court and the jury to divorce two answers from the remainder of Miller's statement. This Florida law does not allow. "A charge of perjury may not be sustained by the device of lifting a statement of the accused out of its immediate context and thus giving it a meaning wholly different than that which its context clearly shows." *Id.* (quoting *Van Liew v. United States*, 321 F.2d 674 (5th Cir. 1963)).

2.

Even assuming *arguendo* Miller definitively and falsely stated that there were no calls after January as alleged, Miller may

---

[4] Miller never denied the occurrence of any phone call about which he was asked.

correct or clarify his answer(s) during later questioning. "[A]n initially false statement ... can be further explained so that the statement taken as a whole is not perjury." *Parris*, 359 So. 3d at 1187 (quoting *McAlpin v. Crim. Just. Stds. & Training Comm'n*, 155 So. 3d 416, 421 (Fla. 1st DCA 2014)).

Such correction or clarification is not only permitted—it is encouraged. Permitting an individual to clarify or correct prior false or erroneous statements advances the core of judicial functions—a just determination of cases based on applicable law and the truth born from evidence. Florida law has long recognized this enduring principle.

> A judicial investigation or trial has for its sole object the ascertainment of the truth, that justice may be done. It holds out every inducement to a witness to tell the truth by inflicting severe penalties upon those who do not. This inducement would be destroyed if a witness could not correct a false statement except by running the risk of being indicted and convicted for perjury. The law encourages the correction of erroneous and even intentionally false statements on the part of a witness, and perjury will not be predicated upon such statements when the witness, before the submission of the case, fully corrects his testimony.

*Brannen v. State*, 114 So. 429, 431 (Fla. 1927) (internal quotations and citations omitted).

Here, even if Miller was considered to have definitively and falsely stated that no calls occurred after January, his later answers corrected or clarified the uncertain timing of calls, including those made or received in February and March 2021. As a result, as a matter of law, Miller cannot be found guilty of perjury as charged in the information.

### III.

Accordingly, since Miller's sworn statement viewed as a whole is insufficient to support the perjury conviction, we REVERSE the judgment and sentence, VACATE Miller's conviction, and REMAND

with instructions that the trial court enter a judgment of not guilty in favor of Miller.

It is so ordered.


JAY and KILBANE, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____