522 So.2d 64 (1988)
Joan Galbreath PHILLIPS, John D. Woods, Novice W. Fawcett, Arthur G. James, Dean W. Jeffers, and Richard Stimmel, Appellants,
v.
ORANGE CO., INC., a Delaware Corporation, Appellee.
Nos. 87-1640, 87-1641.
District Court of Appeal of Florida, Second District.
February 12, 1988.
Rehearing Denied March 17, 1988.
Marvin E. Barkin and Craig P. Clendinen of Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A., for appellants, Joan Galbreath Phillips, John D. Woods, Novice W. Fawcett, Arthur G. James, and Dean W. Jeffers.
John T. Blakely of Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Clearwater, for appellant, Richard Stimmel.
Robert R. Vawter, Jr. and Jeanne T. Tate of Shackleford, Farrior, Stallings & Evans, P.A., Tampa, for appellee.
SCHOONOVER, Judge.
Joan Galbreath Phillips, John D. Woods, Novice W. Fawcett, Arthur G. James, Dean W. Jeffers, and Richard Stimmel, defendants in the trial court, appeal an order denying their motions to dismiss an action brought against them by the appellee, Orange Co., Inc., a Delaware corporation. We find that the trial court erred in ruling that it had personal jurisdiction over the appellants and, accordingly, reverse.
*65 Orange Co. acted as a holding company for Orange Co. of Florida, a wholly owned Florida corporation which conducted its operations in the state of Florida. Orange Co.'s primary source of income was derived through its ownership of Orange Co. of Florida. Although Orange Co. owned assets and was authorized to do business in several states, at all times material to this action, it was not authorized to transact business in the state of Florida. See § 607.304, Fla. Stat. (1985). While Orange Co.'s corporate and financial records were maintained at Orange Co. of Florida's office in Florida, Orange Co.'s executive offices were located in Columbus, Ohio.
The dispute between the parties arose out of a contract between Orange Co. and its president, appellant Stimmel, who is an Ohio resident. The contract was the type commonly referred to as a "golden parachute,"[1] and according to its terms, Stimmel was to receive various severance benefits if his employment with Orange Co. was terminated under certain specified circumstances. The remaining appellants, also non-Florida residents, voted to approve the contract in their capacity as members of Orange Co.'s board of directors. The contract was executed at Orange Co.'s offices in Columbus, Ohio.
Stimmel subsequently terminated his employment with Orange Co. in a manner described by the contract and demanded to receive the severance benefits provided for by the terms of the contract. Pursuant to the contract, Stimmel exercised an option to purchase a number of shares of Orange Co. common stock at a price below the market value. Stimmel also received monetary severance benefits from funds located in an Ohio bank account which belonged to Orange Co. of Florida.
Orange Co. subsequently filed a tort action in Polk County, Florida against the appellants because of their respective roles in the approval and execution of the contract. Orange Co. of Florida was not named as a party. The second amended complaint filed by Orange Co. attempted to assert "long arm jurisdiction" over the appellants pursuant to section 48.193(1)(b), Florida Statutes (1985). Stimmel and the remaining appellants filed two respective motions to dismiss for lack of personal jurisdiction. After the trial court denied both motions to dismiss, Stimmel and the remaining appellants filed timely appeals which have been consolidated.
The parties agree that under the facts of this case, if the trial court acquired personal jurisdiction over the appellants, it was acquired pursuant to section 48.193(1)(b). Section 48.193(1)(b) provides:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
... .
(b) Committing a tortious act within this state.
The trial court, therefore, only had jurisdiction over the appellants if Orange Co.'s cause of action arose from a tortious act committed by the appellants within the state of Florida. We agree with the appellants' contention that the record in this case does not establish that a "tortious act" was committed within the state.
Any breach of fiduciary duty by the appellants was committed in the state of Ohio when the appellant directors voted to approve Stimmel's contract. When the contract at issue was executed in Ohio, Orange Co. became exposed to specific liabilities which were contingent upon the occurrence of certain events. These contingencies were transformed into actual liabilities when Stimmel elected to terminate his employment in Ohio as provided in the contract. Orange Co., rather than liquidating *66 its own assets or borrowing money in its own name, chose to discharge its liabilities to Stimmel with funds contained in an Ohio bank account which belonged to Orange Co. of Florida. Thus, any tortious acts committed by the appellants occurred in Ohio.
Orange Co. argues that the trial court could acquire long arm jurisdiction over the appellants pursuant to section 48.193(1)(b) because the alleged tortious conduct of the appellants caused Orange Co. financial injury in Florida. We disagree. Although the fact that an injury occurs in Florida is crucial to a determination of when a cause of action accrued, the occurrence of the injury alone in the forum state does not satisfy the statutory test of section 48.193(1)(b). Jack Pickard Dodge, Inc. v. Yarbrough, 352 So.2d 130 (Fla. 1st DCA 1977). In addition, although Orange Co.'s contractual liabilities were discharged with monetary assets of its Florida subsidiary as a result of the appellants' alleged acts in Ohio, this fact does not establish that Orange Co. itself suffered any financial damages in Florida. Orange Co. was not authorized to transact business in Florida. Its Florida subsidiary, Orange Co. of Florida, was a separate corporate entity and was not a party to the lawsuit. Even the money which Stimmel received came from Orange Co. of Florida's bank account located in Ohio. We, therefore, find that any injury to Orange Co. or its Florida subsidiary was sustained in Ohio.
In arguing that an injury was sustained in Florida, Orange Co.'s reliance on International Harvester Co. v. Mann, 460 So.2d 580 (Fla. 1st DCA 1984), is misplaced. In Mann, our sister court stated that the "commission of a tort" for purposes of establishing long arm jurisdiction under section 48.193(1)(b) does not require physical entry into the state, but merely requires that the place of injury be in Florida. Since we find that Mann is factually distinguishable from the case at bar, we decline to agree or disagree with the Mann court's interpretation of section 48.193(1)(b). Although in Mann, the alleged acts of the defendant corporate officers occurred in another state, the victimized Delaware corporation had its physical assets and its operation as a business solely within the state of Florida. In the case sub judice, however, Orange Co. was a Delaware corporation which operated in Ohio. The mere fact that Orange Co.'s financial records were maintained in Florida and that its directors had other independent interests in Florida does not permit the same result as in Mann where the corporate assets involved in the tort were located in Florida.
Because no part of the appellants' alleged tortious conduct occurred in Florida and no injury resulting from the appellants' alleged conduct was suffered by Orange Co. in Florida, the trial court did not have jurisdiction over the appellants pursuant to section 48.193(1)(b). See Freedom Savings & Loan Association v. Ormandy & Associates, Inc., 479 So.2d 316 (Fla. 5th DCA 1985). We, therefore, reverse the order denying the appellants' motions to dismiss and remand this cause with instructions to dismiss the complaint as to the appellants.
Reversed and remanded.
RYDER, A.C.J., and LEHAN, J., concur.
NOTES
[1] A "golden parachute" is generally defined as a termination agreement designed to trigger substantial bonuses and other benefits for corporate executives or directors upon a takeover of the corporation. See Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc., 506 A.2d 173, fn. 5 (Del. 1986).