851 So.2d 665 (2003)
Martin ACQUADRO, M.D., et al., Petitioners,
v.
Janet BERGERON, et al., Respondents.
No. SC01-896.
Supreme Court of Florida.
July 10, 2003.
*666 Donna M. Greenspan of Edwards & Angell, LLP, West Palm Beach, FL, for Petitioners.
Robert Rivas of the Rivas Law Firm, Tallahassee, FL, for Respondents.
QUINCE, J.
We have for review Acquadro v. Bergeron, 778 So.2d 1034 (Fla. 4th DCA 2001), a decision of the Fourth District Court of Appeal, which expressly and directly conflicts with the decisions of the Fifth District Court of Appeal in Horowitz v. Laske, 751 So.2d 82 (Fla. 5th DCA 1999), quashed sub nom. Wendt v. Horowitz, 822 So.2d 1252 (Fla.2002);[1]Thompson v. Doe, 596 So.2d 1178 (Fla. 5th DCA 1992), approved, 620 So.2d 1004 (Fla.1993); Intercontinental Corp. v. Orlando Regional Medical Center, Inc., 586 So.2d 1191 (Fla. 5th DCA 1991); McLean Financial Corp. v. Winslow Loudermilk Corp., 509 So.2d 1373 (Fla. 5th DCA 1987), and the Second District Court of Appeal in Koch v. Kimball, *667 710 So.2d 5 (Fla. 2d DCA 1998); Phillips v. Orange Co., 522 So.2d 64 (Fla. 2d DCA 1988); and Texas Guaranteed Student Loan Corp. v. Ward, 696 So.2d 930 (Fla. 2d DCA 1997). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

PROCEDURAL AND FACTUAL BACKGROUND
On September 17, 1997, respondent Janet Bergeron (Bergeron) was arrested for battery on Edward Acquadro (Eddie), the uncle of petitioner Dr. Martin Acquadro and the brother-in-law of petitioner Rose Acquadro. Both Dr. Acquadro and Rose Acquadro are residents of Massachusetts. At the time of Bergeron's arrest, Eddie was 72 years old and Bergeron was 38 years old. Before the arrest, Eddie and Bergeron resided together in the same house in Boca Raton, Florida.[2]
Bergeron and Eddie went to Bonnie Towing & Recovery, Inc. (Bonnie Towing)[3] to recover their car, which had been towed. When a Bonnie Towing employee informed Bergeron that the tow bill was $100, Bergeron became hostile. She began to yell at Eddie, and forcibly picked him up and carried him out of the office through the front door. Eddie hit his head on the door on the way out. After Bergeron carried Eddie outside, she hit Eddie in the arm with a car battery. Bergeron was taken into custody after Bonnie Towing employees called the police to the scene.
The police found probable cause to arrest Bergeron for battery of a person 65 years of age or older. However, the State ultimately entered a nolle prosse because the mental evaluations of Bergeron concluded that the "criteria of legal insanity" were present; therefore, the State could not meet its burden of proving Bergeron's intent beyond a reasonable doubt.
Dr. Acquadro and his parents, Rose Acquadro and the since-deceased Andrew Acquadro, learned of Bergeron's arrest on the day she was arrested.[4] Andrew and Rose Acquadro arranged for Eddie to fly to Massachusetts to obtain medical care and treatment. After recuperating, Eddie moved to an assisted nursing center. Eddie eventually died on August 27, 1998.
Bergeron spent thirteen days in jail and was then released. Bergeron claims that while she was in jail, the residence was ransacked and her belongings were stolen. Moreover, Bergeron contends that upon returning to the residence, she discovered that an employee of Bonnie Towing, James R. Bonnie (Bonnie), had been given a "power of attorney" to dispose of all of the property in the residence. Bonnie allegedly explained that the Acquadros had paid him for "liquidating all of Janet's possessions, Janet and Eddie's possession[s]." Additionally, Bergeron contends that Rose *668 Acquadro personally supervised Bonnie as he disposed of the property in the residence shared by Bergeron and Eddie, and that Rose Acquadro presided over the discarding or selling of the property from the house in Palm Beach County.
On September 18, 1997, a circuit judge entered an order of no contact against Bergeron. The order provided that Bergeron was to have no contact, direct or indirect, in or out of custody, with Eddie. On October 17, 1997, at Bergeron's arraignment, the circuit court entered an order directing Bergeron to obtain a new residence. Despite these orders, on October 18, 1997, the police advised Dr. Acquadro that Bergeron's father, Robert Bergeron, was at Eddie's house, and that Robert Bergeron told the police that Janet Bergeron was still coming to the house during the day.
On October 24, 1997, Dr. Acquadro commenced a civil action against Bergeron and her father, alleging causes of action for unlawful entry and detention, trespass, and declaratory relief.[5] Because the counts for unlawful entry and detention and declaratory judgment were rendered moot when Eddie regained possession of the house, these claims were dismissed on January 6, 1998. Dr. Acquadro dismissed the case in its entirety on August 25, 1998.[6]
On February 23, 1999, Bergeron filed a six-count complaint against Dr. Acquadro, Rose Acquadro, Bonnie Towing, and several Bonnie employees, including James Bonnie. The complaint raised claims of false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress against all of the defendants. Bergeron also brought a defamation claim against Rose Acquadro based upon a telephone call from Massachusetts to Bergeron, her sister Jacqueline Branz, and James Bonnie in Florida in which Acquadro stated that Bergeron "had AIDS."[7] Finally, Bergeron brought a civil theft claim against James Bonnie and the Acquadros for allegedly disposing of her property located in the house she shared with Eddie.
The Acquadros filed a motion to dismiss for lack of jurisdiction and for failure to state a cause of action, and filed affidavits in support of the motion to dismiss for lack of jurisdiction. In the affidavits, Rose Acquadro denied making a defamatory statement, but did not deny that she made the statement during a telephone conversation with individuals in Florida that Bergeron "had AIDS." Bergeron did not file any affidavits in opposition to the Acquadros' motion to dismiss, but instead presented the live testimony of both herself and her sister at a hearing on the issue of personal jurisdiction. At the hearing, both Bergeron and her sister, Jacqueline Branz, testified that Rose Acquadro and James Bonnie called Eddie's residence the day that Bergeron was released from jail. Branz testified that Rose told her that she wanted them out of her house. Branz also testified that Rose told her that Bergeron *669 "had AIDS."[8] Additionally, the trial court allowed the parties to argue both personal jurisdiction and whether Bergeron's complaint stated cognizable causes of action. The trial court ultimately denied the Acquadro's motion to dismiss.
On appeal to the Fourth District, the Acquadros contended that Bergeron's failure to refute their affidavits denying the tortious conduct required the trial court to grant their motion to dismiss for lack of personal jurisdiction. See Acquadro v. Bergeron, 778 So.2d 1034, 1035 (Fla. 4th DCA 2001). The Fourth District rejected this argument, explaining that
[t]he purpose of affidavits in these circumstances is "to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts." Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989).[[9]] Where the affidavits are in conflict, the trial court holds a "limited evidentiary hearing in order to determine the jurisdiction issue." Id. at 503.
In the present case the trial court did hold an evidentiary hearing, but the purpose was not, as the court correctly recognized, to resolve whether the defendants had committed the torts. That would have required a full-blown trial, not the limited evidentiary hearing contemplated by Venetian Salami.

Because the defendants' affidavits did not deny that the telephone communication, which was the basis of personal jurisdiction, had occurred, the trial court correctly denied the motion to dismiss. Carida v. Holy Cross Hosp., Inc., 424 So.2d 849 (Fla. 4th DCA 1982) (committing defamation by telephone call into Florida constituted the commission of a tort in Florida and subjected defendant to personal jurisdiction); Silver v. Levinson, 648 So.2d 240 (Fla. 4th DCA 1994) (same).
Id. Therefore, the Fourth District affirmed the trial court's denial of the Acquadros' motion to dismiss. This appeal followed.

ANALYSIS

I.
The conflict issue in this case is whether the Fourth District erred in concluding that personal jurisdiction was proper over two out-of-state residents based on section 48.193(1)(b), Florida Statutes (1999).[10] Recently, in Wendt, we addressed *670 a substantially similar issue, and concluded:
[I]n order to "commit a tortious act" in Florida, a defendant's physical presence is not required. Second, "committing a tortious act" in Florida under section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida. However, the cause of action must arise from the communications. This predicate finding is necessary because of the connexity requirement contained in section 48.193(1). See § 48.193(1) (stating that "[a]ny person... who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself ... to the jurisdiction of the courts of this state for any cause of action arising from the doing of the following acts").
822 So.2d at 1260 (footnote omitted). Therefore, on the basis of Wendt, we approve the Fourth District's decision to the extent it concluded that allegedly defamatory phone calls made into Florida by a nonresident could be sufficient to establish personal jurisdiction. Accordingly, we find that Rose Acquadro's telephone conversation in which she stated that Bergeron "has AIDS" is sufficient to establish personal jurisdiction.
However, petitioners also contend that even if the Court concludes that jurisdiction is proper with regard to Rose Acquadro, the Court should still reverse the Fourth District's decision with regard to Dr. Martin Acquadro. Petitioners explain that the defamation claim was brought only against Rose Acquadro. Therefore, petitioners allege that the Fourth District's decision may be read as holding that statements made via telephone into Florida resulting in claims for false arrest or malicious prosecution are sufficient for jurisdiction under section 48.193(1)(b), and that this holding conflicts with this Court's decision in Thompson, the Fifth District's decisions in McLean Financial, Texas Guaranteed, and Intercontinental Corp. and the Second District's decisions in Phillips and Texas Guaranteed Student Loan Corp.
Our decision in Wendt expressly disapproves of McLean Financial and Intercontinental Corp. to the extent that those cases require physical presence in Florida in order to establish personal jurisdiction under section 48.193(1)(b). See Wendt, 822 So.2d at 1260. Moreover, as explained above, the Wendt opinion expressly holds that "telephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction under section 48.193(1)(b) if the alleged cause of action arises from the communications." Id.[11] In the instant case, Dr. Acquadro *671 never denied the telephone communications which Bergeron alleged occurred. Dr. Acquadro, in his affidavit contesting jurisdiction, denied speaking to representatives from Bonnie Towing. Although Dr. Acquadro denied lying to the police and the prosecutor, he never denied his involvement in the telephone communications with individuals in Florida which form the basis of the tort claims. Section 48.193 does not, as petitioners argue, distinguish among the universe of possible torts. Instead, the statute provides that any person who commits a tortious act in this state submits himself or herself to the personal jurisdiction of the courts of this state. See § 48.193(1), Fla. Stat. (1999). Since this Court has held that a tortious act can arise from an individual's telephonic communications, see Wendt, 822 So.2d at 1260, we find that the telephonic communications made by Dr. Acquadro are sufficient to form the basis for personal jurisdiction in this case.

II.
Additionally, petitioners contend that the trial court erred in refusing to shift to Bergeron the burden of proving that jurisdiction was proper after they filed affidavits in this case. In Venetian Salami, this Court explained the procedure for contesting personal jurisdiction as follows:
Initially, the plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the statute without pleading the supporting facts. By itself, the filing of a motion to dismiss on grounds of lack of jurisdiction over the person does nothing more than raise the legal sufficiency of the pleadings. A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of his position. The burden is then placed upon the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained.
554 So.2d at 502 (citations omitted). Thus, petitioners contend that after they filed affidavits contesting personal jurisdiction, the burden should have shifted to Bergeron to demonstrate why jurisdiction was proper in this case. However, as Bergeron points out, petitioners' contention only has merit assuming that the affidavits were legally sufficient to shift the burden.
Because this case involves two separate defendants, a separate jurisdictional analysis will be conducted for each. With regard to Rose Acquadro, in addition to claims of false and malicious prosecution, false imprisonment, intentional infliction of emotional distress, and civil theft, Bergeron's amended complaint raised a defamation claim, alleging:
On or about October 2, 1997, ROSE ACQUADRO made a statement that Ms. Bergeron "has AIDS."
ROSE ACQUADRO published the statement that Ms. Bergeron "has AIDS" to third parties, Jacqueline Branz and JAMES R. BONNIE.
ROSE ACQUADRO's statement that Ms. Bergeron "has AIDS" was false.
Said statement was defamatory.
Said statement was of and concerning Ms. Bergeron.
ROSE ACQUADRO uttered the statement with common law malice, spite, hatred, ill-will, and an evil intention to injure and defame.
Standing alone, "the filing of a motion to dismiss on grounds of lack of *672 jurisdiction over the person does nothing more than raise the legal sufficiency of the pleadings." Venetian, 554 So.2d at 502. In order to prevail on a motion to dismiss, a defendant must file an affidavit containing allegations, which if taken as true, show that the defendant's conduct does not make him or her amenable to service. See, e.g., Waye v. Eddings, 638 So.2d 582, 583 (Fla. 1st DCA 1994); Atlas Aircraft Corp. v. Buckingham, 302 So.2d 163, 164 (Fla. 4th DCA 1974). Additionally, the affidavits submitted must contain something "more than the assertion of legal conclusions." Rever v. Lapidus, 151 So.2d 61, 62 (Fla. 3d DCA 1963). In response to the allegations in the complaint, Rose Acquadro filed an affidavit in conjunction with her motion to dismiss, which stated in pertinent part: "I did not make defamatory statements about Bergeron." Therefore, rather than claim that she did not make the statement that Bergeron "has AIDS," all Rose Acquadro's affidavit provides is a legal conclusion that the content of her statement was not defamatory. This is insufficient to shift the burden to Bergeron to demonstrate that jurisdiction was proper in this case.[12] Therefore, with regard to Rose Acquadro, the Court finds that the burden remained on her to contest the propriety of personal jurisdiction in this case.
With regard to Dr. Martin Acquadro, the analysis becomes slightly more complicated. In connection with Bergeron's false arrest and prosecution and false imprisonment claims, Bergeron alleged the following facts:
MARTIN ACQUADRO and ROSE ACQUADRO spoke by telephone from Massachusetts with the BONNIE TOWING representatives before, during, and after Ms. Bergeron's arrest. The Acquadros offered them money or other benefits to procure Ms. Bergeron's arrest.
....
MARTIN ACQUADRO and ROSE ACQUADRO took extraordinary steps to aggressively push for Ms. Bergeron to be prosecuted. They provided false, malicious and incriminating information to the police and prosecutors to encourage Ms. Bergeron's prosecution. They hired private investigators to follow her around and take pictures of her, and provided information to the authorities to support a claim that she was continuing to seek out Edward W. Acquadro, as if she were a threat to him.
Specifically, Bergeron alleged in her malicious prosecution claim that:
An original criminal judicial proceeding was commenced against Ms. Bergeron *673 on on charges of elderly abuse or neglect and battery of an elderly person.
The defendants legally caused said criminal judicial proceedings to be commenced against Ms. Bergeron.
The defendants legally caused said criminal judicial proceedings to be continued against Ms. Bergeron.
There was a bona fide termination of the criminal prosecution on the merits in favor of Ms. Bergeron.
There was a lack of probable cause for the prosecution of Ms. Bergeron.
The defendants caused Ms. Bergeron's prosecution with malicious intent.
In Dr. Martin Acquadro's affidavit contesting jurisdiction, he stated:
Bergeron's amended complaint in this action contains several false allegations. I did not speak with and was not even acquainted with representatives of defendant, Bonnie Towing & Recovery ("Bonnie Towing") prior to Bergeron's arrest. I did not offer money or other benefits to procure Bergeron's arrest. In fact, I knew nothing of Bergeron's arrest until after it had occurred.
I never lied to the police to convince them to arrest and prosecute Bergeron. I did not make false statements regarding Bergeron's abuse toward my uncle. I did not make false statements regarding Bergeron's neglect of my uncle. I did not provide false or malicious information to the police and prosecutors.
My attorneys did not provide the criminal court with false information to support the Order of No Contact and Order Directing New Residence. In fact, these orders had already been entered by the time that legal counsel was retained to represent my uncle's interests in Acquadro I.

....
I did not unlawfully restrain Bergeron or deprive her of her liberty interest against her will. I did not cause Bergeron to be falsely imprisoned or deprived of her liberty. I did not conduct myself toward Bergeron in an extreme or outrageous manner.
(Emphasis supplied.) This underlined portion of the affidavit constitutes factual contentions refuting the basis for personal jurisdiction concerning the false arrest and imprisonment claims. In other words, because Dr. Acquadro contends that he did not speak to the Bonnie Towing employees before Bergeron's arrest, he claims that he could not be involved in Bergeron's alleged false arrest or false imprisonment. Dr. Acquadro's factual refutation of Bergeron's false arrest and false imprisonment claims shifts the burden to Bergeron to demonstrate the basis for jurisdiction as to these claims.
However, Dr. Acquadro's statements in his affidavit with regard to the malicious prosecution claim appear to be legal conclusions rather than assertions of fact. For example, although he contends that he never lied to the police, Dr. Acquadro does not refute the fact that he gave information to the police. It is a matter for the jury to decide at trial whether Dr. Acquadro in fact lied. Therefore, we conclude that Dr. Acquadro did not meet his burden in refuting the allegations in the complaint, at least insofar as the malicious prosecution claim goes. Thus, the burden remained with both of the Acquadros to demonstrate that personal jurisdiction was improper in this case.

CONCLUSION
Accordingly, we approve the Fourth District's determination that personal jurisdiction of Rose Acquadro and Dr. Martin Acquadro was proper.
It is so ordered.
*674 ANSTEAD, C.J., and LEWIS, J., and SHAW, Senior Justice, concur.
WELLS, J., dissents with an opinion.
PARIENTE, J., recused.
WELLS, J., dissenting.
I dissent from the majority's decision to approve the Fourth District's decision that the trial court correctly denied the motion to dismiss. The decisions of the trial court, district court, and the majority of this Court do not follow the procedures or reasoning of or the two-step procedure outlined in Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla.1989), and reaffirmed in Wendt v. Horowitz, 822 So.2d 1252 (Fla.2002), and Doe v. Thompson, 620 So.2d 1004 (Fla.1993), in order to determine whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements. In respect to both defendants, the case should be remanded with directions that the trial court enter an order based upon the evidentiary hearing as to whether there were minimum contacts demonstrated in accord with the procedures and reasoning of Venetian Salami Co.
Venetian Salami Co. was grounded upon the recognition that a state's long arm jurisdiction implicates due process requirements of the United States Constitution:
[I]n cases involving jurisdiction over nonresidents, there are constitutional issues which we must also consider. A court may acquire personal jurisdiction over a nonresident only if the nonresident has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Thus, under a given factual situation, even though a nonresident may appear to fall within the wording of a long arm statute, a plaintiff may not constitutionally apply the statute to obtain jurisdiction in the absence of the requisite minimum contacts with the forum state. Harlo Products Corp. v. Case Co., 360 So.2d 1328 (Fla. 1st DCA 1978); Jack Pickard Dodge, Inc. v. Yarbrough, 352 So.2d 130 (Fla. 1st DCA 1977).
[Osborn v. University Society, Inc., 378 So.2d 873, 874 (Fla. 2d DCA 1979).]
We approve of the foregoing analyses in [Scordilis v. Drobnicki, 443 So.2d 411, 412 (Fla. 4th DCA 1984) ], [Unger v. Publisher Entry Service, Inc., 513 So.2d 674, 675 (Fla. 5th DCA 1987) ], and Osborn. The mere proof of any one of the several circumstances enumerated in section 48.193 as the basis for obtaining jurisdiction of nonresidents does not automatically satisfy the due process requirement of minimum contacts. We do recognize, however, that implicit within several of the enumerated circumstances are sufficient facts which if proven, without more, would suffice to meet the requirements of International Shoe Co.

Venetian Salami Co., 554 So.2d at 502.
The procedure to be followed is that set forth in Venetian Salami Co.
Initially, the plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the statute without pleading the supporting facts. Fla. R. Civ. P. 1.079(i); Jones v. Jack Maxton Chevrolet, Inc., 484 So.2d 43 (Fla. 1st DCA 1986). By itself, the filing of a motion to dismiss on grounds of lack of jurisdiction over the person does nothing more than raise the legal sufficiency of the pleadings. Elmex Corp. v. Atlantic Fed. Savings & Loan Ass'n, 325 So.2d *675 58 (Fla. 4th DCA 1976). A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of his position. The burden is then placed upon the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained. Elmex Corp. In most cases, the affidavits can be harmonized, and the court will be in a position to make a decision based upon facts which are essentially undisputed. However, the question remains with respect to what should be done if the relevant facts set forth in the respective affidavits are in direct conflict. There is no Florida decision on this question, and the instant case highlights the dilemma.
....
... Therefore, we hold that in cases such as this, the trial court will have to hold a limited evidentiary hearing in order to determine the jurisdiction issue.

Venetian Salami Co., 554 So.2d at 502-03 (emphasis added).
We have recognized this as a two-step inquiry. In Doe, 620 So.2d at 1005, this Court said:
This Court, in Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989), explained the two-step inquiry for determining long-arm jurisdiction over a nonresident defendant. A court first must determine whether the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of our long-arm statute. Id. at 502. A court then must determine whether sufficient minimum contacts exist between our forum state and the defendant to satisfy the Fourteenth Amendment's due process requirements  in short, whether a nonresident defendant "should reasonably anticipate being haled into court" in Florida. Id. at 500 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).)
See also Wendt v. Horowitz, 822 So.2d at 1257. This procedure was basically followed in this case in the trial court, in that following the filing of the defendant's affidavits, the trial court held an evidentiary hearing.[13] However, the trial judge did not enter an order following the evidentiary hearing setting out the trial judge's required and essential determination from the evidence in respect to minimum contacts.
The district court's decision states:
In the present case the trial court did hold an evidentiary hearing, but the purpose was not, as the court correctly recognized, to resolve whether the defendant had committed the torts. That would have required a full-blown trial, not the limited evidentiary hearing contemplated by Venetian Salami.

Because the defendants' affidavits did not deny that the telephone communication, which was the basis of personal *676 jurisdiction, had occurred, the trial court correctly denied the motion to dismiss.
Acquadro v. Bergeron, 778 So.2d 1034, 1035 (Fla. 4th DCA 2001). It is the sum of these conclusions which do not follow Venetian Salami Co. or the reasoning upon which Venetian Salami Co. was based. Likewise, this does not follow this Court's decision in Wendt.
In Wendt, this Court made the specific point that the fact that a communication was made into Florida was not sufficient to determine the issue of minimum contacts. This Court remanded Wendt with directions that there be further proceedings to make that determination.
While I agree that there is no requirement for a full-blown trial on the tort claim, the district court erred and the majority now errs in holding that the defendant's not denying the telephone call alone was sufficient to establish the "minimum contacts." Moreover, without any basis, the majority simply rejects Dr. Acquadro's affidavit statement that he did not have the telephone conversation in which the alleged tortious conduct occurred. This leads to the inevitable conclusion that in the view of the majority, any telephone conversation, consisting of tortious conduct or not, is sufficient. That cannot meet constitutional muster. Such a holding would logically mean that every communication, regardless of its substance, by an out-of-state person would subject the caller to being haled into Florida's courts. Furthermore, it must be recognized that this long-arm jurisdiction has a statutory base as well as a constitutional limitation. In this instance, the statutory requirement is the commission of a tort in Florida. Therefore, there has to be in the evidentiary hearing some evidence that a tort has been committed in Florida. Though no case has stated what kind of showing is necessary, I believe the standard should be similar to a probable cause showing in a criminal setting. But in this case, there was no indication by the trial judge of what evidence he found to support minimum contacts. At the very least, in respect to Dr. Acquadro, I cannot find in the record factual evidence to support minimum contacts that he committed a tort in Florida.
Additionally, I believe Justice Pariente, sitting then as a judge on the Fourth District Court of Appeal, in Silver v. Levinson, 648 So.2d 240, 242-243 (Fla. 4th DCA 1994), set out what also should have been determined by the trial judge following the evidentiary hearing:
In defendant's second prong of attack, he asserts that subjecting him to jurisdiction in Florida violates his due process rights. We must analyze whether subjecting defendant to suit in Florida violates his due process rights even if jurisdiction is proper under Florida' s long arm statute. Venetian Salami; Estate of Vernon, 609 So.2d [128] at 128 [(Fla. 4th DCA 1992) ].
The single most important factor to consider is whether "the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there...." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 287, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). This factor must be viewed from the perspective of the defendant, not that of the plaintiff. See Shaffer v. Heitner, 433 U.S. 186, 207, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Due process requires that the nonresident have sufficient minimum contacts with the state of Florida such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

*677 The United States Supreme Court has rejected any "talismanic jurisdictional formula" to determine the requisite minimum contact. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 485-86, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Subjecting a defendant to in personam jurisdiction based on a single, isolated transaction by the nonresident defendant does not necessarily offend due process. Lacy v. Force V Corporation, 403 So.2d 1050, 1054 (Fla. 1st DCA 1981); see also Godfrey v. Neumann, 373 So.2d 920 (Fla.1979). Doe does not hold otherwise. The analysis must focus on the nature of the act. When dealing with isolated acts of a defendant, rather than centering on continuous economic activity within the state, a key focus is the quality and nature of the interstate transaction. The court must inquire into whether the conduct is so random, fortuitous or attenuated that it cannot fairly be said that the potential defendant should reasonably anticipate being haled into court in another jurisdiction. Burger King, 471 U.S. at 486, 105 S.Ct. 2174.
(Emphasis added.) I add to this the express recognition in Venetian Salami of the United States Supreme Court requirement set out in International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), that "[a] court may acquire personal jurisdiction over a nonresident only if the nonresident has `minimum contacts with [the forum state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" 554 So.2d at 502 (quoting Osborn v. University Society, Inc., 378 So.2d at 874).
This case presents a bizarre and unusual factual situation. From a reading of the transcript of the testimony presented at the evidentiary hearing, it is even unclear what occurred in respect to the isolated telephone call that is the subject of the defamation claim against defendant Rose Acquadro. Petitioner's brief, appendix item 7 at 44. It does not appear that the defendant initiated the call into Florida. I know of no authority for a telephone call not made by an out-of-state person into the state being sufficient "minimum contacts" for which the out-of-state person has been held to reasonably contemplate being haled into court in the state from which the call was initiated. This question has a factual basis component including an assessment of credibility, in which it is necessary that the trial court make a specific determination. See Venetian Salami Co., 554 So.2d at 503 n. 1. Here, the trial court did not make that determination.
Therefore, the decision of the district court should be quashed with directions to remand to the trial court. I would include in the directions that the trial judge should allow the parties to put on any additional evidence which is relevant to the issue of minimum contracts pursuant to the standards for this determination and then for the trial judge to make specific factual and legal determinations in respect to minimum contacts.
Finally, it is my view that because this is a bizarre factual situation, it is not a case in which this Court needs to or even should write an opinion if the majority is going to approve the district court. Though I do not agree with approving the district court, it appears to me that it would be far better to simply discharge jurisdiction.
NOTES
[1] Prior to the disposition of this case, we quashed the Fifth District's decision in Horowitz and disapproved of the court's decisions in Intercontinental Corp. and McLean to the extent that those decisions were inconsistent with our decisions in Wendt v. Horowitz, 822 So.2d 1252 (Fla.2002), and Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So.2d 582 (Fla.2000). See Wendt, 822 So.2d at 1260. Since we have quashed the Fifth District's decision in Horowitz, that decision cannot serve as a basis for conflict jurisdiction.
[2] Bergeron contends in her complaint that she and Eddie lived together for eight years and that they "lived together as if they were husband and wife, and held themselves out to be husband and wife." Dr. Acquadro states in his affidavit contesting personal jurisdiction that Bergeron and Eddie lived together for "several years" and that Eddie "allowed Bergeron to reside in his house."
[3] Bonnie Towing and several of its employees were defendants below. However, the only defendants before this Court are Dr. Martin Acquadro and Rose Acquadro.
[4] The parties dispute the time at which the Acquadros learned of Bergeron's arrest. Bergeron contends that the Acquadros conspired with Bonnie Towing in order to have Bergeron arrested, and this contention forms the basis for her false imprisonment, false arrest, and malicious prosecution claims. By contrast, the Acquadros' affidavits contend that they did not learn of Bergeron's arrest until after it occurred.
[5] The parties dispute whether this action was brought in Dr. Acquadro's personal capacity, or whether he brought this action based upon a power-of-attorney from Eddie.
[6] On December 24, 1998, Bergeron filed a claim against Eddie's estate, seeking a constructive or resulting trust over "all assets formerly on deposit in [Eddie] and [Bergeron's] account with IBM Southeast Employees Federal Credit Union." On March 11, 1999, the trial court struck the claim on the basis that Bergeron was not an interested party in the proceedings.
[7] Although the record is not completely clear on this point, it appears that this call was a conference call, in which Bonnie called Rose Acquadro in Massachusetts, and Rose Acquadro and Bonnie proceeded to call Bergeron in Palm Beach County.
[8] Bergeron testified that she did not speak to Rose Acquadro, but she overheard the entire conversation.
[9] In Doe v. Thompson, 620 So.2d 1004, 1005 (Fla.1993), this Court explained the two-pronged Venetian Salami test for contesting personal jurisdiction as follows:

This Court, in Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989), explained the two-step inquiry for determining long-arm jurisdiction over a nonresident defendant. A court first must determine whether the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of our long-arm statute. Id. at 502. A court then must determine whether sufficient minimum contacts exist between our forum state and the defendant to satisfy the Fourteenth Amendment's due process requirements-in short, whether a nonresident defendant "should reasonably anticipate being haled into court" in Florida.
[10] Section 48.193(1)(b), Florida Statutes (1999), provides:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
....
(b) Committing a tortious act within this state.
[11] Similarly, the Second District in Koch considered whether a tape-recorded telephone call between a nonresident defendant and a Florida resident plaintiff could serve as the basis for personal jurisdiction under section 48.193(1)(b). See 710 So.2d at 6. The Second District held that the tortious act occurred in Florida because the interception occurred where the communication was uttered, and thus the nonresident defendant was subject to personal jurisdiction under section 48.193(1)(b). See id. Thus, we approve the Second District's decision in Koch because like Wendt, the decision held that a telephonic communication into Florida can constitute a tortious act under section 48.193(1)(b). Yet, in Texas Guaranteed Student Loan, the Second District held that sending debt collection letters and making telephone calls from out of state to a Florida resident is insufficient to establish jurisdiction under section 48.193(1)(b). See 696 So.2d at 932. However the Second District did not consider whether the plaintiff's cause of action arose from the defendant's sending debt letters and making collection calls. Cf. Wend t, 822 So.2d at 1260. Therefore, we disapprove the Second District's decision in Texas Guaranteed Student Loan to the extent that the decision holds that telephonic or electronic communications may not serve as the basis for personal jurisdiction.
[12] In fact, the overwhelming majority of Rose Acquadro's affidavit contains legal conclusions rather than refutation of the facts in Bergeron's complaint:

I never lied to the police to convince them to arrest and prosecute Bergeron. I did not make false statements regarding Bergeron's abuse toward Eddie. I did not make false statements regarding Bergeron's neglect of Eddie. I did not provide false or malicious information to the police and prosecutors.
I did not make defamatory statements about Bergeron. I did not steal, convert, or commit theft of Bergeron's property, and I did not conspire to steal, convert, or commit theft of Bergeron's property.
I did not unlawfully restrain Bergeron or deprive her of her liberty against her will. I did not cause Bergeron to be falsely imprisoned or deprived of her liberty. I did not conduct myself toward Bergeron in an extreme or outrageous manner.
I have committed no tortious acts against Bergeron in the State of Florida or elsewhere. My conduct has not been such that I should reasonably anticipate being haled into court in Florida. Maintenance of this suit would offend traditional notions of fair play and substantial justice.
[13] I do not agree with the majority opinion that the defendant's affidavit was insufficient to require the plaintiff to move forward with contradicting proof on the issue of jurisdiction. To rest a decision in this case on a 1963 district court opinion which in actuality found jurisdiction was lacking is contrary to Venetian Salami Co. and the plain trend of Florida law since 1963, which is to have issues in civil cases decided on their merits, not on technical pleading issues. Moreover, the defendant's affidavit was essentially the same as the affidavit referred to in Doe v. Thompson, with which this Court stated no problem. Nevertheless, the sufficiency of the affidavit in this case is irrelevant since the trial court held the evidentiary hearing, which, pursuant to Venetian Salami Co., is triggered by the filing of the affidavit.