# Third District Court of Appeal

## State of Florida

Opinion filed June 10, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2975
Lower Tribunal No. 13-37522
_____

**Kingland Estates, Ltd,; Classic Investments, Ltd.; and Richard Cox,**
Appellants,

vs.

**Kathleen Davis, Marjorie Ilma Knox, and the Marjorie Ilma Knox Revocable Trust,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Lisa S. Walsh, Judge.

Holland & Knight, J. Raul Cosio, Christopher N. Bellows and Rebecca M. Plasencia, for appellants.

Nicholson & Eastin, LLP and Robert N. Nicholson, (Fort Lauderdale); Broad and Cassel, Mark F. Raymond, Patricia M. Baloyra and Beverly Pohl, for appellees.

Before SHEPHERD, C.J., and WELLS and SALTER, JJ.

WELLS, J.

Kingsland Estates Limited ("KEL"), Classic Investments Limited (KEL's majority shareholder), and Richard Cox (sole shareholder and managing director of Classic and chairman and managing director of KEL) (collectively "the Barbados defendants")[1], appeal from an order denying their motion to dismiss for lack of personal jurisdiction. We reverse the order on appeal and remand with instructions to dismiss the Barbados defendants from the instant action.

Plaintiff Marjorie Ilma Knox, around whom this action centers, is a citizen of Barbados currently living in Miami.[2] This action has its genesis in the sale of shares in a family owned company, KEL, which was formed in 1958 to hold title to substantial acreage in Barbados. Beginning in 1992, members of Ms. Knox's family began to acquire other family members' shares of stock in KEL and ultimately in 2005, Classic purchased all but Ms. Knox's remaining shares in KEL, giving Classic control of the company.

Since that time, Ms. Knox has filed a number of actions in Barbados and at least one in Canada to secure a ruling that her remaining shares are worth more than evidenced by KEL's books and records. In 2007, Ms. Knox created a

---

[1] Both KEL and Classic are Barbados corporations; Cox is a citizen and resident of Barbados. Neither of these two corporations has any officers, directors, property, bank accounts or other connections to Florida and Cox similarly has no connections or property here.

[2] Ms. Knox became a U.S. citizen in January of 2015.

2

revocable trust funded by her shares of KEL stock. Her daughter, Kathleen I. Davis, as trustee and as Ms. Knox's attorney in fact, has now joined with Ms. Knox in these efforts, filing an action in the probate division of the circuit court. The instant action takes a new tack, this time claiming that the Barbados defendants and two of Ms. Knox's relatives, Iain Deane and Tess Rohmann—both of whom sold their shares in KEL to Classic in 2007—have engaged in a criminal enterprise to force her to divest her interest in KEL for less than its full value. According to Ms. Knox and her daughter:

> Appellants participated in 'a coordinated and systematic scheme . . . to intimidate, threaten, defame, and extort Mrs. Marjorie Knox and the other Plaintiffs . . .' with the objective 'to force Mrs. Knox and/or the . . . Trust . . . to sell highly valuable real estate holdings in . . [KEL] for far below market value. . . .' '[This] coordinated scheme evolved in or around the year 2007 from a scheme of obfuscation, misinformation, and false accounting, to become a racketeering enterprise that began employing threats, harassment, and intimidation directed into the United States, all designed to forcibly divest Mrs. Knox and/or the Knox Trust of its interest in KEL . . . .'

The complaint asserts four specific instances in which members of this enterprise purportedly acted in Florida in furtherance of their scheme:

- posting of anonymous threats and defamatory statements on a blog created and controlled by Kathleen here in Miami, Florida;

- delivering "false financial" records to Ms. Knox in Miami, Florida;

- giving perjured testimony in connection with "a civil court proceeding in Miami"; and

3

- tampering with "potential witnesses in Miami."

The complaint asserts five causes of action. Count I seeks relief under section 895.03 of the Florida Statutes (Florida's RICO statute); Count II seeks relief under section 895.03(4) (for RICO conspiracy); Count III claims intentional infliction of severe emotional distress; Count IV claims defamation; and Count V claims a conspiracy. Jurisdiction over the Barbados defendants is invoked under section 48.193, Florida's long arm statute on a claim that based on the aforementioned acts these defendants committed these crimes and torts in the state of Florida.

The Barbados defendants moved to dismiss the action against them and supported that motion with the affidavit of Richard Cox. The court below denied the motion to dismiss concluding that the complaint satisfied the initial pleading requirements of section 48.193 of the Florida Statutes and that the Barbados defendants' affidavit did not directly contest the factual allegations in the complaint with respect to long arm jurisdiction or minimum contacts. We review this matter de novo, and reverse. See Wendt v. Horowitz, 822 So. 2d 1252, 1256 (Fla. 2002) ("This Court must conduct a de novo review of a trial court's ruling on a motion to dismiss for lack of personal jurisdiction."); accord Edwards v. Airline Support Group, Inc., 138 So. 3d 1209, 1211 (Fla. 4th DCA 2014); Swanky Apps, LLC v. Roony Invest & Fin., S.A., 126 So. 3d 336, 338 (Fla. 3d DCA 2013);

4

Extendicare, Inc. v. Estate of McGillen, 957 So. 2d 58, 63 (Fla. 5th DCA 2007); Dev. Corp. of Palm Beach v. WBC Constr., L.L.C., 925 So. 2d 1156, 1160 (Fla. 4th DCA 2006).

By each count of their complaint, Ms. Knox and her daughter sought to secure jurisdiction over the Barbados defendants under section 48.193, which in pertinent part provides:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
>       . . . .
>
>       2.  Committing a tortious act within this state.

§ 48.193(1)(a)2., Fla. Stat. (2014).

In Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989), the Florida Supreme Court articulated a two-step analysis to determine whether personal jurisdiction exists over a nonresident defendant under section 48.193 of the Florida Statutes. "A court first must determine whether the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of our long-arm statute. A court then must determine whether sufficient minimum contacts exist between our forum state and the defendant to satisfy the Fourteenth Amendment's due process requirements—in short, whether a nonresident defendant 'should

5

reasonably anticipate being haled into court' in Florida." Acquadro v. Bergeron, 851 So. 2d 665, 669 n.9 (Fla. 2003) (quoting Doe v. Thompson, 620 So. 2d 1004, 1005 (Fla. 1993)); see Rollet v. de Bizemont, 159 So. 3d 351, 356 (Fla. 3d DCA 2015) ("In Florida, 'both parts [of the personal jurisdicition test] must be satisfied for a court to exercise personal jurisdiction over a non-resident defendant.' Hampton Island Pres., LLC v. Club & Cmty. Corp., 998 So. 2d 665, 667 (Fla. 4th DCA 2009) (quoting Am. Fin. Trading Corp. v. Bauer, 828 So. 2d 1071, 1074 (Fla. 4th DCA 2002)).").  With regard to the Barbados defendants, neither prong of the Venatian Salami analysis was met.

Here, all five counts of the complaint are predicated on the same jurisdictional facts:  that some unidentified and unknown individuals made threatening, defamatory statements on a blog maintained in Miami by Ms. Knox's daughter; that the defendants, which would include the Barbados defendants, sent false financial statements to Ms. Knox in Florida; and that the defendants, which would include the Barbados defendants, committed perjury in an action pending in Miami when Tess Rohmann "lied under oath regarding numerous issues, including the price per share at which she had sold her KEL shares."

First and most obviously, Count III claiming intentional infliction of emotional distress[3] and Count IV claiming defamation[4] fail to allege any

---

[3] See Winter Haven Hosp., Inc. v. Liles, 148 So. 3d 507, 515 (Fla. 2d DCA 2014):

6

jurisdictional facts that would bring this action within the ambit of Florida's long-arm jurisdiction statute. See Thorpe v. Gelbwaks, 953 So. 2d 606, 609 (Fla. 5th DCA 2007) ("First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of Florida's long-arm jurisdiction statute."); Gerber Trade Fin., Inc. v. Bayou Dock Seafood Co., 917 So. 2d 964, 966 (Fla. 3d DCA 2005) (same). As the Florida Supreme Court has explained, a defendant, like the Barbados defendants, need not be physically present in Florida to commit a tortious act here but may commit a tortious act in Florida for purposes of section 48.193(1)(a)2,[5] through "telephonic, electronic, or

---

The elements of the tort of [outrage] are:

(1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result;

(2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;

(3) the conduct caused emotion[al] distress; and

(4) the emotional distress was severe.

[4] See NITV, L.L.C. v. Baker, 61 So. 3d 1249, 1252 (Fla. 4th DCA 2011) ("'To establish a cause of action for defamation, a plaintiff must show that (1) the defendant published a false statement about the plaintiff, (2) to a third party, and (3) the falsity of the statement caused injury to the plaintiff.' Razner v. Wellington Reg'l Med. Ctr., Inc., 837 So. 2d 437, 442 (Fla. 4th DCA 2002) (citing Valencia v. Citibank Int'l., 728 So. 2d 330, 330 (Fla. 3d DCA 1999)).").
[5] Acquadro, 851 So. 2d at 670, cites to section 48.193(1)(b), "committing a tortious act within this State," however that section has since been renumbered, and now

7

written communications into Florida." <u>Acquadro</u>, 851 So. 2d at 670; <u>see</u> <u>Wendt</u>, 822 So. 2d at 1253; <u>Swanky Apps, LLC</u>, 126 So. 3d at 339. However, in this case, the complaint and the affidavits attached to and incorporated into it, concede that after years of effort, plaintiffs have been unable to identify the defendants as the individuals who posted the offending defamatory statements that form the basis for the claims asserted in Counts III and IV. Moreover, the affidavit submitted by Cox on behalf of the Barbados defendants affirmatively states that they were not involved in the conduct alleged.[6] This evidence was wholly unrefuted. Thus, as to

section 48.193(1)(a)2 contains that same language.

[6] Cox's affidavit provided in part:

> 25. I have never posted any comment on any internet blog in Florida or anywhere in the world, at any time, including concerning any of the Plaintiffs or their family members or the ownership of KEL shares.

> 26. I have never endorsed, directed, instructed, conspired with or agreed with any agent, independent contractor, co-Defendant, or any other individual or entity to send any comment or blog, including any defamatory, threatening, violent, or otherwise inappropriate posting to any internet blog in Florida or anywhere in the world, at any time, including concerning any of the Plaintiffs or their family members or the ownership of KEL shares or otherwise.

> 27. I have no knowledge of whom the "John Does" named in the Complaint are, where they might be located, why they have posted comments on internet blogs, or from where these comments were posted.

> 28. I have never met with, made a phone call to, or sent a communication via regular or electronic mail to any individual or entity or John Doe in the State of Florida or anywhere else in the

Counts III and IV, the established jurisdictional facts are insufficient to bring this action within the ambit of the long-arm statute.

The same result obtains for the remaining three counts of the complaint—Count I claiming violation of section 895.03(1), (2), and (3) of the Florida Statutes—Florida's RICO act[7]; Count II claiming violation of section 895.03(4) of

world, at any time, to engage in any plan, scheme, or action to defame or threaten Plaintiffs through websites, internet blogs, or the posting of comments on such websites or internet blogs or otherwise.

[7] See de la Osa v. State, 158 So. 3d 712, 721-22 (Fla. 4th DCA 2015), which explains:

Section 895.03(3), Florida Statutes (2003), the substantive RICO charge . . . provides:

(3) It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.

Section 895.02, Florida Statutes (2003), defines the terms contained in section 895.03(3) and (4):

• "Racketeering activity" means "to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit" any crime chargeable by indictment or information under specifically enumerated criminal statutes. § 895.02(1), Fla. Stat. (2003).

• An "enterprise" is defined, in relevant part, as "any ... group of individuals associated in fact although not a legal entity." § 895.02(3), Fla. Stat. (2003).

9

the Florida Statutes—RICO conspiracy provision[8]; and Count IV claiming the

---

> • A "pattern of racketeering activity" is defined as "engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurred after the effective date of this act and that the last of such incidents occurred within 5 years after a prior incident of racketeering conduct." § 895.02(4), Fla. Stat. (2003).

The statute implicated in [a] conspiracy to commit RICO charge . . . provides:

> (4) It is unlawful for any person to conspire or endeavor to violate any of the provisions of ... subsection (3).
>
> § 895.03(4), Fla. Stat. (2003).

[An] organized scheme to defraud charge . . . involves section 817.034(4)(a) 1., Florida Statutes (2003), which provides that "[a]ny person who engages in a scheme to defraud and obtains property thereby is guilty of organized fraud," punishable as a first degree felony if the amount of property obtained has "an aggregate value of $50,000 or more." The statute defines certain terms:

> • "Scheme to defraud" is defined as "a systematic, ongoing course of conduct with intent to defraud one or more persons, or with intent to obtain property from one or more persons by false or fraudulent pretenses, representations, or promises or willful misrepresentations of a future act." § 817.034(3)(d), Fla. Stat. (2003).

(Footnote omitted).

[8] See § 895.03(4), Fla. Stat. (2014) (making it illegal to conspire to violate sections 895.03(1), (2), or (3)).

existence of a conspiracy.[9, 10]    These three counts rely on the same factual

predicate claiming that the Barbados defendants engaged in a conspiracy and a

pattern of racketeering by:

a. making defamatory and threatening posts on the daughter's blog in
   violation of sections 836.05, 836.10, 895.02 of the Florida Statutes;

b. making false entries in the books of a corporation (KEL) in
   violation of sections 817.034, 817.15, and 895.02(2) of the Florida
   Statutes;

c. suborning perjury and obstructing justice in violation of sections
   837.02 and 892.02(2) of the Florida Statutes;

d. tampering with, harassing, or retaliating against a witness, victim,
   or informant in violation of sections 914.22 and 895.02 of the
   Florida Statutes; and,

e. cyberstalking and exploiting an elderly person in violation of
   sections 784.048 and 825.103 of the Florida Statutes.

Reduced, if possible, to their essence, these claims allege that the Barbados

defendants and a number of unidentified others conspired to deprive Ms. Knox of

---

[9] See Olesen v. Gen. Elec. Capital Corp., 135 So. 3d 389, 398-99 (Fla. 5th DCA 2014) ("Civil conspiracy consists of the following elements: '(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy.'" (quoting Walters v. Blankenship, 931 So. 2d 137, 140 (Fla. 5th DCA 2006))).

[10] In Count V, plaintiffs repeat their assertions that Ms. Knox had been threatened—again, behavior plaintiffs conceded could not be positively attributed to any of the defendants.

11

the true value of her shares in KEL, and engaged in an enterprise to accomplish this goal by (1) anonymously making threatening posts to a Miami blog which defamed Ms. Knox and so threatened her that she was unable to appear in Barbados as a witness in proceedings pending there; (2) mailing several purportedly "false and fraudulent accounting records to Marjorie Knox . . . at her present address in Miami, Florida thereby devaluing her KEL stock"; and, (3) suborning purportedly perjured testimony in another case pending in a Florida court as to the price one of Knox's relatives had received for her KEL shares.[11, 12]

As with Counts III and IV, these allegations are insufficient to support personal jurisdiction under Florida's long-arm statute over the Barbados defendants. As already stated and as the complaint and its attachments concede, after years of trying, plaintiffs have been unable to tie any of the offending blog-posts to anyone much less to the Barbados defendants so as to bring the Barbados

---

[11] See Cohen v. State, 985 So. 2d 1207, 1209 (Fla. 3d DCA 2008) ("[S]tatements alleged to be perjurious must be of 'empirical fact' and not of opinion, belief or perception. See Vargas v. State, 795 So. 2d 270, 274 (Fla. 3d DCA 2001). One of the essential elements of perjury in official proceedings is that the person making the statement does not believe it to be true. Id. at 272. The elements of perjury in official proceedings are: 1) making a false statement, 2) which one does not believe to be true, 3) under oath in an official proceeding, 4) in regard to any material matter. See § 837.02(1), Fla. Stat. (1999).").

[12] The plaintiffs also alleged defendant Deane had "lied under oath in a proceeding in Barbados" concerning the sale price of his stock shares; however, this claim can certainly in no way support the conclusion that a Florida court could assert personal jurisdiction over the Barbados defendants.

defendants within the jurisdiction of Florida's courts. With regard to the purported false entries or fraud related to KEL's annual statements, the allegations consist of no more than an accusation that miscellaneous information was not included in the audited annual financial statements and a wholly conclusory statement that as a consequence of the failure to include this information the statements were "false and fraudulent":

> More specifically, the Defendants have caused KEL to send (and continue to send) false and fraudulent accounting records to Marjorie Knox via Federal Express at her present address in Miami, Florida. For example:
>
>> a. In March 2010, KEL sent by FedEx false "Audited Financials" of KEL which included the following falsehoods, among others: that the financials had been properly audited by a duly appointed auditor; the financials omitted material information regarding and [sic] any reference to the indemnification; the financials failed to reflect transactions and pending agreements; and the financials failed to account for accruing amounts due.

These allegations do not state *facts* that demonstrate that either a false statement was made or that a fraud has been perpetrated and will not support either a conspiracy claim or RICO claim much less personal jurisdiction under Florida's long-arm statute. See Salazar v. HSBC Bank, USA, NA, 158 So. 3d 699, 702 n.4 (Fla. 3d DCA 2015) ("Salazar's claim that he had been trying to renegotiate his loan and that HSBC had represented that it would be worked out fails to state a claim under any of these grounds including a claim of misrepresentation or fraud.

13

See Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010) (holding that the essential elements of fraudulent misrepresentation are: (1) a false statement concerning a material fact; (2) made with the representor's knowledge that the statement is false; (3) made with the intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation); Cady v. Chevy Chase Sav. & Loan, Inc., 528 So. 2d 136, 138 (Fla. 4th DCA 1988) (confirming that 'allegations that certain representations made were false without designating which ones were false and who made them does not constitute an acceptable pleading of a defense based upon false misrepresentation'); see also Parra de Rey v. Rey, 114 So. 3d 371, 386 (Fla. 3d DCA 2013)(confirming that fraud must be pled with particularity and must specifically identify misrepresentations or omissions of fact, as well as the time, place or manner in which they were made).").

Similarly, no facts were alleged to establish perjury or that the purported perjurer conspired with or agreed to engage in a criminal enterprise with the Barbados defendants. The allegations as to this "claim" is that one of Knox's relatives lied "in a proceeding in Barbados regarding the sales price of his shares in KEL." Since this purportedly happened in Barbados, we fail to see how this subjects the Barbados defendants to jurisdiction in Florida. The complaint also alleges that in 2010 in an action pending in the probate division of the circuit court,

14

one of Knox's relatives, Tess Rohmann, "a former shareholder in KEL," also "lied under oath regarding . . . the price per share at which she had sold her KEL shares. Specifically, Mrs. Rohmann claimed that she sold her shares in KEL at a deflated value of $857,100" when in fact she "actually sold her shares for approximately $1.5 million." The problem with these "facts" is that none of the KEL defendants was a party to that action and they successfully fought any claim of jurisdiction over them in that case. The complaint also confirms that Ms. Rohmann is no longer a shareholder of KEL and there are no *facts* alleged to show (1) that Ms. Rohmann has or at the time of her testimony had any interest, direct or indirect, in either KEL or any of the Barbados defendants; (2) that Ms. Rohmann entered into any agreement—that is conspired—with KEL or any Barbados defendant for any purpose; or (3) that Ms. Rohmann agreed to engage in any scheme or enterprise with KEL or any Barbados defendant for any purpose. Again, no facts were alleged with regard to a purported perjury that would support any of the claims alleged much less long-arm jurisdiction over these foreign defendants.

In sum, we find plaintiffs' complaint does not allege sufficient jurisdictional *facts* to bring any claim, and thus, this action within the ambit of our long-arm statute nor does it demonstrate that sufficient minimum contacts exist between Florida and the Barbados defendants to satisfy the Fourteenth Amendment's due process requirements. In fact, nothing was claimed in the complaint which would

15

make the Barbados defendants reasonably anticipate being haled into a Florida court. See Rollet, 159 So. 3d at 356; Carlyle v. Palm Beach Holdings, Inc., 842 So. 2d 1013, 1017 (Fla. 4th DCA 2003) ("Appellant has also raised issues as to whether any of the alleged torts are actionable and whether the appellees have met their burden to show appellant had sufficient minimal contacts with Florida to satisfy constitutional due process requirements. Our disposition of this appeal on the connexity issue makes it unnecessary for us to decide these other issues."). Moreover, the KEL defendants' affidavit controverted the jurisdictional allegations of the complaint and was not rebutted by the plaintiffs below.

Accordingly, the order denying defendants' motion to dismiss is reversed and the cause is remanded to the trial court with direction to enter an order granting the Barbados defendants' motion to dismiss.[13]

---

[13] Our conclusion makes it unnecessary to consider the defendants' alternative argument that the case should have been dismissed on *forum non conveniens* grounds.